Matter of **WILMINGTON SPEEDWAY,**
**Inc., Debtor.**
**No. 1554.**

United States District Court
D. Delaware.
Nov. 14, 1958.

Vincent A. Theisen and Aubrey B. Lank, Wilmington, Del., for Wilmington Speedway, Inc.

Albert W. James and Arthur J. Sullivan, Wilmington, Del., for Hessler, Inc.

LAYTON, District Judge.

Hessler Realty and Development Co. (Hessler) and Wilmington Speedway, Inc. (Speedway) entered into a lease on November 29, 1951, whereby certain property 1½ miles south of Wilmington on the duPont Parkway was leased to the latter. The lease was for a period of five years from May 1, 1952, until April 30, 1957. An automobile track for stock car racing was erected upon the premises together with grandstands, light standards, etc. Under the terms of the lease, these latter installations were to remain the property of Speedway.

On December 31, 1953, Speedway's petition for reorganization under Chapter X of the Bankruptcy Act (11 U.S.C.A. § 501 et seq.) was approved and an Order entered permitting it to remain in possession. Speedway operated the premises until January 7, 1957, when it was adjudicated a bankrupt. At that time, rent under the lease had accrued and remained unpaid in the sum of $2,-579.68. From January 7, 1957, until March 8, 1957, when the trustee rejected the lease, rent had accrued and remained unpaid in the sum of $833.32. The fees of the attorney for the debtor in possession, together with the expenses of the trustee in bankruptcy and Hessler's claim for rent exceed the amount available for distribution.

The first question is whether or not the fees and expenses of the attorney for the debtor in possession (Petitioner) share pro rata with the expenses of administration of the bankruptcy. The answer depends upon whether the rentals from the lease are an expense of administration. Except for the leasehold, the trustee would have been put to the expense of moving and storing grandstands, light standards and other fixtures pending their sale in a situation where their only value, except perhaps junk value, was as attached to the race track. Since the trustee was able to sell the fixtures for $5,000 to the new lessor of the premises, it is a fair conclusion that the lease aided the trustee in preserving the assets of the estate until the sale of the fixtures to the new lessor was consummated. I decide that the rental was one of the costs of administration in the liquidation proceeding. Compare 3 Collier on Bankruptcy (14 Ed.) § 62.14, pp. 1503–1504.

Prior to 1952, § 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, gave priority to all costs and expenses of the bankruptcy, both reorganization and liquidating, without designating any particular order of priority between them. Thus, prior to 1952, the fees of the attorney for the debtor in possession would have been entitled to payment on a pro rata basis with all the other priorities enumerated therein. As said by the Third Circuit Court in In re Columbia Ribbon Co., 117 F.2d 999, 1001:

"* * * Consequently all administration expenses, whether incurred during the reorganization period or during the liquidation period and whether for costs and expenses or for services, must share pro rata in the funds available for payment."

In 1952, however, Sec. 64, sub. a was amended by the insertion of the following language (11 U.S.C.A. § 104):

"* * * Provided, however, That where an order is entered in a proceeding under any chapter of this title directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter incurred in the superseded proceeding * * *."

The purpose of this amendment was to preserve funds for the payment, ahead of all prior costs of administration, of the costs of bankruptcy so that there

would be no breakdown in the orderly closing of the bankrupt's estate.[1]

The petitioner argues that the effect of the 1952 amendment above quoted was no more than to guarantee priority (ahead of all other expenses of administration of the bankruptcy) to such liquidating costs as bond and insurance premiums, those incurred in conducting public sales and compensation for the services of the referee, trustee, and fees of the latter's attorney. Certainly, he contends, there is no expressed intention to include in this class of priorities such expenses as a landlord's rental. In justification he points to the language of the Committee reports[2] as sustaining his contention. But it is significant that this language is not exclusive in character. It is preceded by the words "such as", meaning for instance. Other proper expenses of the administration of the bankruptcy are obviously contemplated. In many cases, trustees have been forced to rent facilities for the storage and preservation of valuable personal property pending its sale.[3] If payment for rentals such as this were not accorded priority over expenses of prior Chapter X proceedings, landlords could not be found to rent such facilities and there might be serious loss resulting in a breakdown in the closing out of the estate. At the risk of repetition, it is proper to point out that Hessler's property was put to enforced use under the reorganization proceeding, first in order to see if Speedway could be brought out of its financial difficulties, and, finally, under the liquidating proceeding, to maintain a status quo so that its facilities, such as grandstands, etc., pending sale, did not have to be severed from the realty and thus be reduced to scrap value. True, Hessler did not suffer because, with the sale of the facilities, came a new lease. But this was fortuitous and the fact remains that the value of the facilities was maintained and $5,000 instead of, perhaps junk value, realized therefrom. I can only conclude that Hessler's claim was a cost of administration within the meaning of the 1952 amendment. To hold otherwise might in some future case lead to a breakdown in the administration of a liquidating bankruptcy proceeding.

The trustee's total costs in liquidation including referee's costs were $454.58. It is my conclusion that this sum together with Hessler's claim of $833.32 constitute costs of administration in the liquidating bankruptcy proceeding and under the 1952 amendment both have priority over petitioner's claim for legal fees during the reorganization.

Deducting these sums from the amount on hand, there remains four thousand odd dollars for distribution. The petitioner's claim for fees as attorney for

1. "(C) The final proviso added to this clause changes the rule that, where bankruptcy follows a debtor-relief proceeding and the fund for distribution is not sufficient to pay the administration costs and expenses of both proceedings, ings shall share pro rata and on a parity. In re Columbia Ribbon Company, 3 Cir., 117 F.2d 999. 45 Am.Bankr.Rep.,N.S., 528; United States v. Killoren, 8 Cir., 119 F.2d 364, 45 Am.Bankr.Rep.,N.S., 808. Unless provision is made for payment, ahead of all prior incurred and unpaid administration costs and expenses, of the costs and expenses necessary to administer and close the estate in the ensuing bankruptcy proceeding, there is always danger of a breakdown of administration. There should be assurance to the trustee in the ensuing bankruptcy proceeding that the costs and expenses incurred by him, such as bond premiums, insurance premiums, costs of conducting a public sale, and compensation for his services and for the services of his attorney out of the assets turned over to and administered by him, will be paid ahead of the prior unpaid costs and expenses. Unless thus assured he cannot be expected to function effectively." House Report No. 2320, June 26, 1952, 82nd Congress, 2nd Session.

2. " * * * *such as* bond premiums, insurance premiums, costs of conducting a public sale, and compensation for his services and for the services of his attorney * * *."

3. Compare In re D. R. U. Corset Co., D.C.W.D.Pa., 7 F.2d 617; In re Abrams, D.C.Iowa, 200 F. 1005.

the debtor in possession in the sum of $5,000, together with out-of-pocket expenses, is reasonable and, moreover, is virtually unchallenged. Is he, as he maintains, entitled to the balance or, as the lessor argues, should the two claims share pro rata in the remainder?

Upon purely equitable considerations, petitioner contends that his claim is entitled to share ahead of Hessler's as to the balance of the fund. Apparent authority exists for this statement. For instance, Collier Bankruptcy Manual, 2d Ed., § 64.102 [2] states:

"Claims for expenses incurred or services rendered by non-bankruptcy officers or other persons in preserving the estate prior to bankruptcy present another question. § 64 [sub.] a(1) with reference to costs of preserving the estate has nothing whatever to do with the problem. Section 64 [sub.] a(1) creates a priority for debts arising from 'the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition.' We have already seen, however, that claims for expenses or compensation with respect to persons who have acted for the benefit of the estate prior to bankruptcy may be allowable on general equitable principles. Where a non-bankruptcy receiver, assignee or similar liquidating or statutory officer has such a claim, it has been indicated that he has an equitable lien on the funds or property in his hands which may be satisfied by a deduction from such property when turned over to the bankruptcy court or which may be paid out of the property thereafter. Although this confers a priority, it is not a priority based on § 64, but is, rather, paramount to the priorities enumerated therein * * *."

 However, I am unable to reconcile this proposition with In re Columbia

Ribbon Co., elsewhere cited, a decision by the Third Circuit Court of Appeals by which I am bound. Except for the 1952 amendment, the law is the same now as when that case was decided, and the facts are remarkably similar. There, a reorganization proceeding under Chapter X had preceded a liquidating bankruptcy.[4] The allowance by the Court of the trustee's attorney's fees and other expenses under Chapter X together with the costs of the liquidating bankruptcy proceeding, which followed the unsuccessful reorganization, exceeded the fund available for distribution. The Court said in part [117 F.2d 1001]:

"[1] Under the provisions of these two sections it is clear that when an unsuccessful reorganization proceeding under Chapter X, 11 U.S.C.A. § 501 et seq., is followed by a liquidation proceeding under the other provisions of the Bankruptcy Act the allowances made by the court in the reorganization proceeding as well as the costs and expenses incurred by the reorganization trustees in operating the business are to be treated as costs and expenses of administration of the bankrupt estate. In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45. The costs and expenses of the liquidation trustee appointed after the debtor has been adjudged a bankrupt and the allowances to him and his counsel for their services are, of course, likewise costs and expenses of administration of the estate. * * *."

The Court then went on to decide that all administration expenses both in reorganization and in the liquidation proceeding "whether for costs * * * or for services" had to share pro rata. Finally, the Court made this significant statement:

"[5–7] The referee and the court below grounded their action in granting priorities within the

---

4. At first the reorganization was under Sec. 77, sub. b, 11 U.S.C.A. § 205, sub. b, but this was later superseded by Chapter X.

class of administration expenses upon what they believed to be the equitable powers of a court of bankruptcy. It is well settled, as the Circuit Court of Appeals for the Fourth Circuit pointed out in Westall v. Avery, 171 F. 626, 628, 'that bankruptcy proceedings themselves are purely equitable in their character, and, within the limits prescribed by the Bankruptcy Act [11 U.S.C.A. § 1 et seq.] and the special rules of practice prescribed by the Supreme Court, are to be administered in accord with the general principles and practices of equity.' See Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. But these equitable powers are to be exercised within the limits laid down by the Bankruptcy Act and subject to its specific provisions. In re Concentrated Products Corp., 3 Cir., 38 F.2d 745. *The court may not by granting a priority which it deems equitable set aside the clear congressional mandate that no such priority shall be accorded. * * *"* (My emphasis.)

This decision, it seems to me, effectively destroys petitioner's argument that he is entitled to a priority upon some equitable consideration independent of Sec. 64 of the Bankruptcy Act.[5] True, the 1952 amendment has changed the result to the extent heretofore discussed but aside from that, the decision remains authoritative.

Petitioner's argument that Hessler is not entitled to assert its claim for rent as an expense of administration because it does not come into this Court with clean hands is unconvincing both under In re Columbia Ribbon Co.,[6] and the facts. Here we have a party whose valuable realty becomes entangled in a reorganization proceeding. This may be regarded as alarming enough but, subsequently, there is a move to sell the assets (principally his lease) during the reorganization. Such an attempt is completely foreign to the philosophy of a reorganization and the Bankruptcy Court so held. I cannot understand why Hessler's efforts to defeat this sale or later, in liquidation, to terminate the lease, could be viewed as anything more than an understandable, if somewhat selfish, effort to extricate itself from an undesirable situation.

Petitioner's argument that Hessler, having filed no claim, is not entitled to participate in the distribution is obviously an afterthought and is not persuasive. Petitioner certainly was not taken by surprise for he was aware for some time that Hessler was asserting its right to priority. Moreover, as I understand it, it is doubtful that any formal claim need be filed for administration expenses. Compare Collier Bankruptcy Manual, 2d Ed., § 62.22(2), p. 752.

In conclusion, I can only repeat that the nub of this case lies in whether Hessler's claim for rental represents an expense of administration in the sense

5. A possible explanation for the discrepancy between Collier and In re Columbia Ribbon Co. is that under Chapter X, where a liquidating proceeding ensues, the date of the Order adjudicating a liquidating bankruptcy seems to relate back to the date of the reorganization proceeding. Moreover, the cases cited by Collier in support of this proposition differ markedly in their facts from those here.

6. "Pepper v. Litton, 308 U.S. 295, [60 S. Ct. 238, 84 L.Ed. 281,] which was relied on by the referee and the court below, is not to the contrary. That case holds that a court of bankruptcy under its equitable powers may disallow or subordinate a particular claim in bankruptcy which, because of the fraudulent nature of the claim or the bad faith or the improper conduct of the claimant, ought not in equity and good conscience to be allowed or paid on a parity with other claims. It does not hold that the court may set up a sub classification of claims within a class given equal priority by the Bankruptcy Act * * *." In re Columbia Ribbon Co., 117 F.2d at page 1002. I see no bad faith or improper conduct on Hessler's part here which could affect the priority of its claim.

that it helped preserve the assets of the estate, first in reorganization and, later, in the liquidation proceeding. I have held elsewhere that it did. The petitioner in his first brief and at the argument conceded that it did. His efforts to vary this result are not convincing. Unfortunately, his claim for fees will have to be shared pro rata with Hessler's after the trustee's and referee's expenses and allowances of $454.58 and Hessler's rent claim of $833.32 have first been paid.

An Order will be entered on notice.