## LOCAL LOAN CO. *v.* HUNT.

No. 783.   Argued April 4, 5, 1934.—Decided April 30, 1934.

*Mr. Frederic Burnham,* with whom *Messrs. David F. Rosenthal, Orville W. Lee,* and *Richard Mayer* were on the brief, for petitioner.

238

*Mr. Lloyd A. Faxon* for respondent.

Mr. Justice Sutherland delivered the opinion of the Court.

On September 17, 1930, respondent borrowed from petitioner the sum of $300, and as security for its payment executed an assignment of a portion of his wages thereafter to be earned. On March 3, 1931, respondent filed a voluntary petition in bankruptcy in a federal district court in Illinois, including in his schedule of liabilities the foregoing loan, which constituted a provable claim against the estate. Respondent was adjudicated a bankrupt; and, on October 10, 1932, an order was entered discharging him from all provable debts and claims. On October 18, 1932, petitioner brought an action in the municipal court of Chicago against respondent's employer to enforce the assignment in respect of wages earned after the adjudication. Thereupon, respondent commenced this proceeding in the court which had adjudicated his bankruptcy and ordered his discharge, praying that petitioner be enjoined from further prosecuting said action or attempting to enforce its claim therein made against respondent under the wage assignment. The bankruptcy court, upon consideration, entered a decree in accordance with the prayer; and this decree on appeal was affirmed by the court below, 67 F. (2) 998, following its decision in *In re Skorcz,* 67 F. (2d) 187.

Challenging this decree, petitioner contends: That the bankruptcy court was without jurisdiction to entertain

a proceeding to enjoin the prosecution of the action in the municipal court; that, assuming such jurisdiction, the rule is that an assignment of future wages constitutes an enforceable lien; but that, in any event, the highest court of the State of Illinois has so decided, and by that decision this court is bound.

*First.* The pleading by which respondent invoked the jurisdiction of the bankruptcy court in the present case is in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court. That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. *Root* v. *Woolworth,* 150 U.S. 401, 410–412; *Julian* v. *Central Trust Co.,* 193 U.S. 93, 112–114; *Riverdale Mills* v. *Manufacturing Co.,* 198 U.S. 188, 194 *et seq.; Freeman* v. *Howe,* 24 How. 450, 460. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved, and notwithstanding the provisions of § 265 of the Judicial Code (R.S., § 720), U.S.C., Title 28, § 379.[1] *Julian* v. *Central Trust Co., supra,* 112; *Dietzsch* v. *Huidekoper,* 103 U.S. 494, 497; *Root* v. *Woolworth, supra,* 413; *M'Donald* v. *Seligman,* 81 Fed. 753; *St. Louis, I. M. & S. Ry. Co.* v. *Bellamy,* 211 Fed. 172, 175–177; *Brun* v. *Mann,* 151 Fed. 145, 150.

---

[1] " The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

These principles apply to proceedings in bankruptcy. *In re Swofford Bros. Dry Goods Co.,* 180 Fed. 549, 554; *Sims* v. *Jamison,* 67 F. (2d) 409, 410; *Pell* v. *M'Cabe,* 256 Fed. 512, 515–516; *Seaboard Small Loan Corp.* v. *Ottinger,* 50 F. (2d) 856, 859. Petitioner relies upon a number of decisions where other federal courts sitting in bankruptcy have declined to entertain suits similar in character to the present one, on the ground that the effect of a discharge in bankruptcy is a matter to be determined by any court in which the discharge may be pleaded. See, for example, *Hellman* v. *Goldstone,* 161 Fed. 913; *In re Marshall Paper Co.,* 102 Fed. 872, 874; *In re Weisberg,* 253 Fed. 833, 835; *In re Havens,* 272 Fed. 975. To the extent that these cases conflict with the view just expressed they are clearly not in harmony with the general rule in equity announced by this court. And we find nothing, either in the nature of the bankruptcy court or in the terms of the bankruptcy act, which necessitates the application of what would amount to a special rule on this subject in respect of bankruptcy proceedings. Courts of bankruptcy are constituted by §§ 1 and 2 of the bankruptcy act (U.S.C., Title 11, §§ 1 and 11), and are invested " with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings," etc. The words " at law " were probably inserted to meet clause (4) of § 2, which empowers such courts to arraign, try and punish certain designated persons for violations of the act. *Bardes* v. *Hawarden Bank,* 178 U.S. 524, 534–536. But otherwise courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity. *Bardes* v. *Hawarden Bank, supra,* 535; *In re Rochford,* 124 Fed. 182, 187; *In re Siegel-Hillman Dry Goods Co.,* 111 Fed. 980, 983; *Swarts* v. *Siegel,* 117 Fed. 13, 16; *Dodge* v. *Norlin,* 133 Fed. 363, 368–369; *In re Swofford Bros. Dry Goods Co., supra,* at p. 553; *In re Lahongrais,* 5 F. (2d) 899, 901; *French* v.

*Long,* 42 F. (2d) 45, 47. And, generally, proceedings in bankruptcy are in the nature of proceedings *in rem,* adjudications of bankruptcy and orders of discharge being, as this court clearly has treated them, in every essential particular decrees in equity determining a *status.* *Hanover National Bank* v. *Moyses,* 186 U.S. 181, 192; *Commercial Bank of Manchester* v. *Buckner,* 20 How. 108, 118, 119.

What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and order, and enjoin petitioner from its threatened interference therewith. It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist. So far as appears, the municipal court was competent to deal with the case. It is true that respondent was not a party to that litigation; but undoubtedly it was open to him to intervene and submit to that court the question as to the effect upon the subject matter of the action of the bankruptcy decrees. And it may be conceded that the municipal court was authorized in the law action to afford relief the equivalent of that which respondent now seeks in equity. Nevertheless, other considerations aside, it is clear that the legal remedy thus afforded would be inadequate to meet the requirements of justice. As will be shown in a moment, the sole question at issue is one which the highest court of the State of Illinois had already resolved against respondent's contention. The alternative of invoking the equitable jurisdiction of the bankruptcy court was for respondent to pursue an obviously long and expensive course of litigation, beginning with an intervention in a municipal court and followed by successive appeals through the state intermediate and ultimate courts of appeal, before reaching a court whose judgment upon the merits of the question had not been predetermined. The

amount in suit is small, and, as pointed out by Judge Parker in *Seaboard Small Loan Corp.* v. *Ottinger, supra*, at p. 859, such a remedy is entirely inadequate because of the wholly disproportionate trouble, embarrassment, expense, and possible loss of employment which it involves.

*Second.* Whether an assignment of future earned wages constitutes a lien within the meaning of § 67 (d) of the bankruptcy act,[2] is a matter upon which the decisions of the state and federal courts are not in complete accord; although by far the larger number of cases and the greater weight of authority are in the negative. We do not stop to review the state decisions. Among those which deny the existence of the lien are *Leitch* v. *Northern Pacific Ry. Co.*, 95 Minn. 35, 38; 103 N.W. 704; *Levi* v. *Loevenhart & Co.*, 138 Ky. 133, 136; 127 S.W. 748; *Public Finance Co.* v. *Rowe*, 123 Ohio St. 206; 174 N.E. 738; *Hupp* v. *Union Pac. R. Co.*, 99 Neb. 654; 157 N.W. 343. The only state cases definitely to the contrary which have been called to our attention are certain Illinois cases, mentioned later, and *Citizens Loan Assn.* v. *Boston & Maine R. Co.*, 196 Mass. 528; 82 N.E. 696. The lower federal courts which have had occasion to consider the question concur in the view that the lien has no existence or is ineffective as against an adjudication and discharge in bankruptcy. Judge Bellinger, in *In re West*, 128 Fed. 205, succinctly stated the ground of his ruling in accordance with that view as follows:

" The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended

---

[2] " Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this Act." U.S.C. Title 11, § 107 (d).

as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors."

This conclusion finds ample support in the following decisions among others. *In re Home Discount Co.*, 147 Fed. 538, 547 *et seq.; In re Lineberry,* 183 Fed. 338; *In re Voorhees,* 41 F. (2d) 81; *In re Fellows,* 43 F. (2d) 122; *In re Potts,* 54 F. (2d) 144; and especially *Seaboard Small Loan Corp.* v. *Ottinger, supra.*

The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence. An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, pre-existing property, but brought into being solely as the fruit of the subsequent labor of the bankrupt.

*Third.* To the foregoing array of authority petitioner opposes the decisions of the Supreme Court of Illinois in *Mallin* v. *Wenham,* 209 Ill. 252; 70 N.E. 564, and *Monarch Discount Co.* v. *C. & O. Ry. Co.,* 285 Ill. 233; 120 N.E. 743. Undoubtedly, these cases hold, as petitioner asserts, that in Illinois an assignment of future wages creates a lien effective from the date of the assignment which is not invalidated by the assignor's discharge in bankruptcy. The contention is that even if the general rule be otherwise, this court is bound to follow the Illinois

decisions, since the question of the existence of a lien depends upon Illinois law.

We find it unnecessary to consider whether this contention would in a different case find support in § 34 of the Judiciary Act of 1789, now § 725, Title 28, U.S.C.,[3] since we are of opinion that it is precluded here by the clear and unmistakable policy of the bankruptcy act. It is important to bear in mind that the present case is one not within the jurisdiction of a state court, but is a dependent suit brought to vindicate decrees of a federal court of bankruptcy entered in the exercise of a jurisdiction essentially federal and exclusive in character. And it is that situation to which we address ourselves, and to which our decision is confined.

One of the primary purposes of the bankruptcy act is to " relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams* v. *U.S. Fidelity & G. Co.,* 236 U.S. 549, 554–555. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns *at the time of bankruptcy,* a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preëxisting debt. *Stellwagen* v. *Clum,* 245 U.S. 605, 617; *Hanover National Bank* v. *Moyses, supra; Swarts* v. *Fourth National Bank,* 117 Fed. 1, 3; *United States* v. *Hammond,* 104 Fed. 862, 863; *Barton Bros.* v. *Texas Produce Co.,* 136 Fed. 355, 357; *Hardie* v. *Swafford Bros. Dry Goods Co.,* 165 Fed. 588, 591; *Gilbert* v.

---

[3] " The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

*Shouse,* 61 F. (2d) 398. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result cannot be accepted as controlling the action of a federal court.

When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either. The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new opportunity in life and the clear field for future effort, which it is the purpose of the bankruptcy act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy. Confining our determination to the case in hand, and leaving prospective liens upon other forms of acquisitions to be dealt with as they may arise, we reject the Illinois decisions as to the effect of an assignment of wages earned after bankruptcy as being destructive of the purpose and spirit of the bankruptcy act.

*Decree affirmed.*