In the Matter of Sylvester WARREN, Debtor.

UNIVERSITY OF ALABAMA HOSPI-
TALS, Diagnostic Radiology Profes-
sional Services, Plaintiffs,

v.

Sylvester WARREN, Defendant.

Bankruptcy No. 80–00879.

AP 80–0117.

United States Bankruptcy Court,
N. D. Alabama, S. D.

Nov. 14, 1980.

William H. Fenn, J. Raymond Lowery, Jr., and A. H. Nichols, Birmingham, Ala., for University of Alabama Hospitals, Diagnostic Radiology Professional Services, garnishor.

Thomas W. H. Buck, Birmingham, Ala., for debtor.

Erante Corina, Birmingham, Ala., for Moskowitz Electric & Supply Co., Inc., garnishee.

John H. Alsbrooks, Jr., Birmingham, Ala., for Ted Greenhalgh Insurance Agency.

Manly & Manly, J. Richard Hynds, Birmingham, Ala., for Board of Trustees of the University of Alabama, d/b/a University Hospitals and Clinics.

OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

The basic facts are undisputed and can be briefly summarized. On March 28, 1979, judgments against the debtor were rendered in the District Court of Jefferson County in favor of the creditors in the amounts of $741.50 and $450.30 plus costs. Writs of garnishment in both cases were served on May 8, 1979, upon the debtor's employer, Moskowitz Electric Supply Company. Moskowitz did not answer the writs; and, under 1975 Ala. Code § 6–6–457, conditional judgments were entered against it on December 10, 1979. The judgments were made final on January 16, 1980, and under the state law neither debtor nor his employer had any further defense or relief from the judgment.

Since the case involves a garnishment on judgment, notice to Defendant was required by Alabama Statutes only prior to the conditional judgment. No further notice to Defendant was required and Defendant had limited rights or defenses that he

could assert in the case. They are enumerated in *Hurt v. Knox*, 220 Ala. 448, 126 So. 110 (1934), as follows:

"Some of the rights of the defendant affected by the failure to give notice, as required by the statute, are: His right to give bond and dissolve the garnishment, Code 1923, Section 8064; his right to contest the answer of the garnishee, Code 1923, Section 8077; his right to discharge the original judgment and have a judgment against the garnishee, Code 1923, Section 8087; and his right to assert his exemptions as against the judgment, Code 1923, Section 7896. All these rights are concluded by the judgment of condemnation, unless the defendant appeals and procures its reversal. Section 8065, Code 1923; *Montgomery Gaslighting Co. v. Merrick and Sons*, 61 Ala. 534."

It can be admitted that under the State Law, the Defendant had no standing to defeat the payment of Plaintiffs' judgment out of his earnings and that he had no remedy available under State Law. Bankruptcy is the only relief available.

The petition in the Bankruptcy Court was filed on February 13, 1980, together with a complaint to release certain pending garnishments, including those of the above named Plaintiffs. Noting that the filing of the petition constituted an automatic stay of the garnishment proceedings under 11 U.S.C. § 362, the Bankruptcy Court entered, on February 15, 1980, an order to those creditors of the debtor who had pending garnishments (including the Plaintiffs) to show cause why the garnishments should not be dismissed. At the hearing on February 20, 1980, the creditors were ordered to dismiss the garnishments and cause Moskowitz, the employer-garnishee, to be discharged. Two of the creditors instituted an appeal. We are concerned primarily in this case with what the effect will be on the debtor if the judgment is enforced against the employer, either by garnishment against the wages of the debtor earned post-petition or by execution against property of the employer which may have the effect of impairing debtor's relationship with his employer.

The basic premise of Bankruptcy Law is the "fresh start" that it affords the debtor, who is entitled to the full relief afforded by the Bankruptcy Law. The concept of "fresh start" does not involve mere words. It is the purpose of the Bankruptcy Code to accord the debtor *complete relief.*

*Local Loan Company v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), has been much cited and should be controlling:

"One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' *Williams v. U. S. Fidelity and Guaranty Co.*, 236 U.S. 549, 34 Am.B.R. 181, 35 S.Ct. 289, 59 L.Ed. 713. This purpose of the Act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. *Stellwagen v. Clum*, 245 U.S. 605, 41 Am.B.R. 1, 38 S.Ct. 215, 62 L.Ed. 507; *Hanover National Bank v. Moyses*, supra; *Swarts v. Fourth National Bank*, (C.C.A., 8th Cir.), 8 Am.B.R. 673, 117 F. 1; *United States ex rel. Adler v. Hammond*, (C.C.A., 6th Cir.), 4 Am.B.R. 736, 104 F. 862; *Barton Bros. v. Texas Produce Co.*, (C.C.A., 8th Cir.), 14 Am.B.R. 502, 136 F. 355; *Hardie v. Swafford Bros. Dry Goods Co.*, (C.C.A., 5th Cir.) [165 Fed. 588, 591, 20 L.R.A. (N.S.) 785, 21 Am.Bankr.Rep. 457; *Gilbert v. Shouse* (C.C.A. 5th)], 21 Am.B.R. (N.S.) 737, 61 F.(2d) 398. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the Act. *Local rules subversive of that result cannot be accepted as controlling the action of a federal court.* (Emphasis added).

State garnishment law should not undermine the proper understanding of the concept of "fresh start" which is protected by the Federal Bankruptcy Laws.

In *C.B. & Q. RR. Co. v. Hall*, 229 U.S. 511, 33 S.Ct. 88, 57 L.Ed. 1306, Vol. 30, American Bankruptcy Report, Page 619, the Supreme Court declared:

"Hall, a married man, head of a family, and insolvent, worked as a switchman for the railroad company in Nebraska, his wages being exempt from garnishment by the laws of that State. While temporarily absent in Iowa, where it had been held that the Nebraska exemption statute had no extraterritorial effect.

"While these two suits were pending in Iowa, Hall returned to Nebraska, was adjudged a bankrupt, and claimed his wages as exempt. No defense was made to the Iowa suits, and in both cases judgment was entered against the railroad as garnishee. For this reason it refused to pay Hall when he demanded the money, which had been set apart to him as exempt by the referee. He then sued the company and recovered a judgment, which was affirmed by the Supreme Court of Nebraska. The railroad sued out a writ of error to test its liability in this class of cases, which it insists are constantly arising, because of the employment of many persons on its lines, extending into different states, with varying garnishment laws. . . .

"This view, we think, is supported both by the language of the section and the general policy of the Act, which was intended not only to secure equality among creditors, but for the benefit of the debtor in discharging him from his liabilities and *enabling him to start afresh with the property set apart to him as exempt.* Both of these objects would be defeated like this present were not annulled, for otherwise the two Iowa plaintiffs would not only obtain a preference over other creditors, *but would take property which it was the purpose of the Bankruptcy Act to secure to the debtor.*

". . . But Hall did not waive his exemption in favor of the Iowa plaintiffs, *and they had no right against his wages except that which was obtained by a legal proceeding within four months of the bankruptcy.* Those liens, having been annulled by 67f of the Bankruptcy Act, furnished no defense to the railroad when sued by Hall for his wages, earned in Nebraska, exempt by the laws of that State, and duly set apart to him by the referee in bankruptcy. The judgment of the Supreme Court of Nebraska is affirmed."

Section 67(a) of the Bankruptcy Act annuls and voids "every lien *against the property* of a person obtained by attachment, judgment, levy, or other legal or equitable process, . . . ."

Section 524(a) of the new Bankruptcy Code replaces Section 67(a) of the old Act and states:

A discharge in a case under this title–(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect any debt discharged under sections 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived: (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, *or from property of the debtor,* whether or not discharge of such debt is waived; and (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim that is excepted from discharge . . . . (Emphasis added).

Section 524(a)(2) clearly states that the discharge operates as an injunction against the continuation of an action to collect, recover or offset any debt from *property* of the debtor.

11 U.S.C. § 541(a)(1) describes the property of the estate:

"The commencement of a case under Sections 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) . . .

'. . . all legal or equitable interests of the debtor in property as of the commencement of the case.' "

Again quoting from *Local Loan Company v. Hunt:*

"When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon his is in the nature of a personal liberty quite as much if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either. The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy. Confining our determination to the case in hand, and leaving prospective liens upon other forms of acquisitions to be dealt with as they may arise, we reject the Illinois decisions as to the effect of an assignment of wages earned after bankruptcy as being destructive of the purpose and spirit of the Bankruptcy Act." 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 24 A.B.R.(N.S.) 668, (1934).

The Supreme Court cases cited above together with the applicable sections of the new Bankruptcy Code leave little doubt that the debtor's contract of employment or right to earn a living constitutes property which is protected from creditors affected by his bankruptcy.

The filing of a petition in the Bankruptcy Court with respect to the defendant acts as an automatic stay upon further enforcement of the writ of garnishment. 11 U.S.C. § 362. Moreover, by claiming the wages as exempt under 11 U.S.C. § 522(b), subject to the limitations of 11 U.S.C. § 522(d), the debtor can avoid the judicial writ which otherwise would preclude the garnishee from paying to the debtor the amount then owed. 11 U.S.C. § 522(f). A discharge will void the underlying judgment and bar prosecution of the garnishment as a means for collecting the discharged debt from the property (including receivables) of the discharged debtor. 11 U.S.C. § 524.

Had the employer withheld the wages from the employee–debtor's paycheck, these sections of the Code would apply in this situation. The debtor could simply have claimed his wages as exempt.

However, the employer–garnishee did *not* withhold these wages. It failed to answer the garnishment proceedings. This is the important and distinguishing fact in this case. While the employer is the guilty party in this case, to prosecute the garnishment against the employer would, in effect, be continuing the case against the debtor. In all probability, the employer would deduct the amount of the debt from the debtor's wages to recoup its loss or a more likely event, fire the debtor for costing it money. The evidence in the case points out the fact that the employer intentionally failed to answer the garnishment proceedings. What mercy can an employee expect when the company has to pay his debt out of their assets and capital? One might say that it is fitting punishment for the company for failing to answer the garnishment proceeding. But this reasoning would lead, in fact, to punishing the debtor who is seeking a "fresh start" free from his pre–existing

debts. It is the purpose of bankruptcy to give the debtor complete relief and to rule otherwise would not do this.

Appellants, however, contend that they are not seeking to enforce a lien against any property of the debtor's, but are seeking to collect a liability of the garnisheed employer, which becomes fixed by virtue of the final judgments in the State Court.

The nature of Alabama's garnishment law *affects wages* to be earned in the future. This applies in all cases under § 6–10–7 of the Alabama Code, whether there is a formal judgment of condemnation or not. § 6–10–7 does not refer to conditional judgment or final judgment but establishes a procedure for making the employer a collection agent for the Plaintiff and to deduct twenty–five percent of all *future wages* earned in all cases.

This is especially true where the Defendant continues to work and earn wages. The employer should answer for his own protection in the event the employment ceases, but his liability continues the same in event of continued employment.

What will the effect be on the debtor and his property if this Court allows a creditor to proceed against the debtor's employer? Doubtless this will indirectly affect the debtor's job and future earnings and his right to earn. This is in direct contravention of the "fresh start" provided by the Federal Bankruptcy Code.

 Bankruptcy, or federal law, is paramount over state law.[1] Section 524 of the Bankruptcy Code is paramount over the state's garnishment law. This Court therefore rules that a discharge will bar prosecution of the garnishment as a means for collecting the discharged *debt* from the property of the discharged debtor and will also bar collection from the garnishee–employer since to do so frustrates the "fresh start" of the debtor. In this case, since no wages were withheld, and prosecution of the judgment will probably result in the debtor's dismissal from his job or result in the company's withholding from his paycheck the amount of the debt to recoup their loss, the garnishment should be dismissed. The underlying obligation of the debt was created by the *debtor, not* his employer. It is impossible to proceed against property of the employer to collect a debt created by the employee without it affecting the employment relationship and thus the "fresh start" concept, and without affecting the property right in the employee's job.

The release and discharge of the garnishment proceedings of both creditors is re–affirmed and the injunction against enforcement of each judgment against debtor's future earnings and against his employer, Moskowitz Electric Company, is continued and made permanent under penalty of contempt.

---

1. The power of Congress, under Constitution Art. I, § 8, cl. 4, to establish uniform laws on *the subject of bankruptcies throughout the* United States is unrestricted *and paramount,* (emphasis added), and a purpose to exclude state action for the discharge of insolvent debtors may be manifested in a national bankruptcy system without specific declaration to that end; that which is clearly implied of equal force as that which is expressed. *International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929).