**In re Raymond Lee GILPIN and Carol Renee Gilpin, Debtors.**

**Bankruptcy No. 96–20433.**

United States Bankruptcy Court, W.D. Missouri.

June 17, 1997.

Harry D. Boul, Columbia, MO, for Debtors.

Fred Dannov, Columbia, MO, for Sunset Mobile Home Park.

Jack E. Brown, Chapter 7 Trustee.

Richard V. Fink, Chapter 13 Trustee.

## ORDER

FRANK W. KOGER, Chief Judge.

Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on April 23, 1996. At that time, they listed a debt in favor of Sunset Mobile Home Park for $679.50 representing unpaid rent on their mobile home lot. Their first amended proposed plan included a provision accepting the unexpired lease and provided that Debtors would pay post-petition rents directly and that prepetition rents would be paid in monthly installments on a pro rata basis with the other general unsecured creditors.

Debtors failed to make any payments to Sunset Mobile Home Park for the post-petition rents and only one payment in the amount of $26.28 was made by the trustee pursuant to the plan for prepetition arrearages. As a result, on February 3, 1997, Sunset Mobile Home Park filed a Motion for Relief from the Stay, and on February 19, 1997, received this Court's Order Granting Relief from Stay and to repossess the property and post-petition rent. On March 10, 1997, Sunset Mobile Home Park obtained a judgment for possession and for post-petition rent from the Circuit Court of Boone County, Missouri, and levied on Debtor Raymond Gilpin's wages on March 10, 1997.

On April 4, 1997, Debtors filed a motion to convert their Chapter 13 case to a case under Chapter 7. On April 8, 1997, this Court granted the motion and pursuant to § 1307(a), converted the case to one under Chapter 7. The following day, April 9, 1997, Debtors filed a Motion for Stay Order requesting the Court to declare that the debt for the post-petition rent is dischargeable and also asked that the Court re-impose the stay with respect to Sunset Mobile Home Park. Sunset Mobile Home Park has filed an answer, praying that the Court deny Debtors' motion because Debtors violated the Chapter 13 plan and did not object to the February 19, 1997, order lifting the stay. This Court conducted a hearing on the motion on May 20, 1997 and makes the following findings of fact and conclusions of law.

The case law has clearly established that conversion from one chapter of the Bankruptcy Code to another does not act to reimpose or reinstate the § 362 automatic stay. *See British Aviation Insurance Co., Ltd. v. Menut (In re State Airlines, Inc.),* 873 F.2d 264 (11th Cir.1989); *In re Parker,* 154 B.R. 240 (Bankr.S.D.Ohio 1993); *American Industrial Loan Assoc. v. Voron (In re Voron),* 157 B.R. 251 (Bankr.E.D.Va.1993). As a result, the Court's order lifting the automatic stay was not affected by the debt-

ors' conversion of their case from Chapter 13 to Chapter 7. *Id.*

On the other hand, it is equally clear that "[a] debt arising during the pendency of a case gives rise to a dischargeable debt upon conversion of the case to another chapter unless the debt is deemed nondischargeable under § 523 of the Code." *Hines v. Gordon (In re Hines)*, 198 B.R. 769, 771 (9th Cir. BAP 1996). Section 348(d) of the Bankruptcy Code provides:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d). In turn, § 727(b), which provides for the debtor's discharge under Chapter 7, reads:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this Chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b).

Clearly, since Sunset's claim is not an administrative expense under § 503(b) nor is it excepted from discharge under § 523, the debt, both for pre-petition rent and post-petition rent, is dischargeable in Debtors' Chapter 7 case.

This presents a problem because the Court is faced with the question of what happens when the automatic stay has been lifted to allow a creditor to collect a debt which has subsequently become a dischargeable debt. The cases this Court found dealing with the post-conversion survival of lift of stay orders, including those cited above, all involved lifts of stay allowing the creditor to foreclose or repossess the property. The

courts in those cases simply held that the creditor could proceed with his foreclosure or repossession of the property. None of them addressed a lift of stay order allowing garnishment or other attempt to collect a judgment debt or deficiency. In the case at bar, under the line of authority cited above, the lift of stay as to *possession* of the lot clearly survives so Debtors are not entitled to resume *possession* of the lot, but the Court must also decide whether Sunset can continue its *garnishment* to collect the judgment debt for post-petition rents. Again, the Court found no case directly addressing that question.

Although the court in *In re Lennon*, 65 B.R. 130 (Bankr.N.D.Ga.1986), was actually addressing another issue (what to do with Chapter 13 payments made by the debtor to the Chapter 13 trustee before the case was converted to Chapter 7), the court in that case briefly addressed the interplay between the line of authority regarding survival of a lift of automatic stay upon conversion and § 348(d), providing that post-petition, pre-conversion debts are dischargeable:

> When a Chapter 13 plan does not work out, the debtor has the privilege of converting to Chapter 7, and when he exercises that right, no reason of policy suggests itself why the creditors [and the debtor] should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts by filing under Chapter 13.

> *This precise restoration of position does not necessarily occur, however, since under Section 349(b) the Court may order otherwise for cause. Similarly, Section 348(d) specifically provides for treatment of post-filing, preconversion debts as having arisen pre-petition, thereby allowing those claims, other than a claim specified in Section 503(b), to be discharged This result is consistent with the policy choices of Congress as expressed in amended Section 1326(a)(2).*

*In re Lennon* 65 B.R. 130, 132 (Bankr. N.D.Ga.1986) (*quoting Hannan v. Kirschenbaum (In re Hannan)*, 24 B.R. 691, 692 (Bankr.E.D.N.Y.1982)) (emphasis added).

Hence, at least one court has concluded that § 348(d) is an *exception* to the premise that when the debtor converts to Chapter 7, the parties are to be put in the same position as if the case had originally been filed as a Chapter 7.[1] This Court believes that the same is true as to the lift of stay: Section 348(d) must be read as an exception to the rule regarding continuance of the lift of stay. This conclusion is bolstered by the language contained in § 348 itself, where Congress said that such post-petition, pre-conversion debts are to be treated as pre-petition debts *for all purposes.* Clearly this would include the purpose of collection of that debt.

According to Collier's, the exception to the general rule in § 348(d) (making post-petition, pre-conversion debts dischargeable):

> applies only to priority status, giving different treatment to preconversion administrative claims by granting them administrative priority that they would not have had had they arisen prior to the order for relief in a nonconverted case. It has nothing to do with the dischargeability of those claims, and therefore, does not alter the application of section 727(b), via 348(b), to them.

3 Collier on Bankruptcy ¶ 348.05[3] at 348–16 (15th ed.1997).

■ Furthermore, the Court believes that the policies of the Bankruptcy Code mandate that garnishment or collection of this dischargeable debt cannot continue. The purpose of discharge is to relieve the honest debtor from his financial burdens and to facilitate the debtor's unencumbered "fresh start." *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Moreover, the Code demonstrates a preference for debtors filing under Chapter 13 and attempting to reorganize rather than originally filing under Chapter 7. This is demonstrated very clearly by the inclusion of § 348 (treating pre-conversion debts as dischargeable) which encourages debtors to first file under Chapter 13 and attempt to reorganize and then, if they are unable to successfully reorganize or comply with a plan, they can convert to Chapter 7 without penalty. *See In re Schmeltz,* 114 B.R. 607, 609 (Bankr.N.D.Ind.1990) (by enacting § 348(d), "Congress thus provided debtors with an inducement to attempt to reorganize under Chapter 13 since post-petition claims could be discharged upon a failed reorganization"); *In re Lennon,* 65 B.R. at 132 ("[t]he statutory scheme of the Bankruptcy Code reflects a congressional intent to make attractive and encourage greater use, which must be voluntary, of Chapter 13 rehabilitation and creditor payment, rather than Chapter 7 liquidation with little or no creditor payment").

As a result, the Court finds that Bankruptcy Code and its supporting case law, as well as its well-recognized policies, compel the conclusion that Sunset Mobile Home Park may not continue to garnish or otherwise collect its judgment for a dischargeable debt.

■ Sunset's argument is based on the fact that Debtors violated the Chapter 13 plan by failing to make the payments and that it did not object to the lift of stay. While failure to make the regular monthly payments to a creditor is ordinarily a material default under a confirmed Chapter 13 plan and gives rise to several possible remedies, including dismissal or conversion to Chapter 7 or may be cause for relief from the automatic stay, *see Lomas Mtg. USA, Inc. v. Elmore (In re Elmore),* 94 B.R. 670, 678 (Bankr.C.D.Cal.1988), this Court was unable to find support for Sunset's proposal that nondischargeability of an otherwise dischargeable debt such as in this case is one of those remedies for breach of the Chapter 13 plan.

Although Sunset waited many months without payment before requesting the stay be lifted, this Court is sympathetic to Sunset Mobile Home Park in this instance because the debt to them increased relatively significantly while the Chapter 13 case was pend-

---

**1.** Several courts have disagreed with the *Lennon* court's holding that the parties are to be put back into the same position as if the debtor had originally filed under Chapter 7 in terms of whether post-petition, pre-conversion property acquired by the debtor becomes property of the Chapter 7 estate for distribution purposes. *See e.g., Ford Motor Credit Co. v. Holly (In re Holly),* 109 B.R. 524, 526 (Bankr.S.D.Ga.1989). That distinction is not relevant here.

ing. However, the Court must conclude that under the Code and applicable case law, as well as the well-known policies behind them, the debt for post-petition rent is dischargeable and therefore, Sunset cannot attempt to collect it by way of garnishment or otherwise.

### CONCLUSION

For the foregoing reasons, the Court concludes that the debt to Sunset Mobile Home Park, both for pre-petition rent and post-petition rent, is dischargeable in the Chapter 7 case. The February 19, 1997, order lifting the automatic stay remains intact in that Debtors are not allowed to regain possession of the lot. The judgment obtained by Sunset Mobile Home Park in Boone County Circuit Court is valid, but because the debt which represents that judgment is dischargeable in Debtors' Chapter 7 case, Sunset Mobile Home Park must cease its garnishment of Debtor Raymond Lee Gilpin's wages. Sunset Mobile Home Park may retain any payments, if any, it obtained through the garnishment before conversion of the case to Chapter 7.

The foregoing Order constitutes Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr.P. 7052.