**In re Orlando Paul BAKER, Debtor.**

**Bankruptcy No. 97–48334 TS.**
**Adversary No. 97–2918.**

United States Bankruptcy Court,
N.D. California,
Oakland Division.

Feb. 17, 1998.

M. Jeffrey Micklas, Law Offices of M. Jeffrey Micklas, Walnut Creek, CA, for Creditor.

Paul Orlando Baker, Pro se.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

On March 26, 1997, Oakland Municipal Credit Union ("Credit Union") obtained a judgment (the "Judgment") against the above-captioned debtor (the "Debtor"). Thereafter, the Credit Union applied for and obtained an earnings withholding order (the "EWO"). The Credit Union served the EWO on the Debtor's employer on May 12, 1997. Under state law, service of the EWO created a garnishment lien (the "Garnishment Lien") on the Debtor's wages. Cal.Civ. Proc.Code § 706.029 (West 1987).

On August 26, 1997, the Debtor filed a chapter 7 petition commencing the above-captioned case. On or about December 4, 1997, the Debtor received a discharge of his dischargeable debts, including his debt to the Credit Union. On November 5, 1997, the Credit Union filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362. In the motion, the Credit Union sought relief to levy the Garnishment Lien on the Debtor's post-petition wages to satisfy the discharged debt. The motion was heard on November 21, 1997, taken under submission, and denied by order dated January 6, 1998. In this Memorandum, the Court explains the reasons for its ruling.

## DISCUSSION

■ As stated above, under California law, "[s]ervice of an earnings withholding order creates a lien upon the earnings of the judgment debtor that are required to be withheld pursuant to the order...." Cal.Civ.Proc. Code § 706.029 (West 1987). An employer is required to withhold the amounts required by the EWO from all earnings of the employee during the "withholding period." Cal.Civ. Proc.Code § 706.022(b) (West 1987). The "withholding period" is defined as a period that commences on the 10th day after service of the EWO on the employer and that continues until the employer has held a sufficient amount to satisfy the judgment (unless the EWO contains an earlier termination date or the employer receives a notice of termination

before the end of the withholding period). Cal.Civ.Proc.Code § 706.022(a) (West 1987).

The Credit Union contends that the Garnishment Lien created by these provisions survives the Debtor's bankruptcy discharge and that it is entitled to continue to enforce the Garnishment Lien against the Debtor's post-petition wages. This contention was rejected in *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). In *Local Loan*, prior to the commencement of his bankruptcy case, the debtor had borrowed $300 from a finance company and, as security for the loan, assigned his future earnings. Like the Credit Union, the finance company in *Local Loan* contended that the voluntary wage assignment remained in effect after the debtor received his discharge and attached to his future wages. The Supreme Court rejected this contention and held that the wage assignment terminated when the debtor filed his bankruptcy petition.

The Supreme Court reasoned that there was no lien on debtor's future earnings when the bankruptcy petition was filed because those earnings did not yet exist. Moreover, the underlying debt was discharged before the debtor's future earnings came into existence. The Supreme Court stated further as follows:

> The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence. An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts ... and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankrupt.

*Id.* at 243, 54 S.Ct. at 698–99. The Supreme Court noted that a contrary holding would undermine the debtor's fresh start and thus

be contrary to a fundamental policy objective of bankruptcy. *Id.* at 245, 54 S.Ct. at 699.

Two other bankruptcy courts have reached the same conclusion. *See In re Gilpin,* 209 B.R. 490 (Bankr.W.D.Mo.1997); *In re Warren,* 7 B.R. 201, 205 (Bankr.N.D.Ala.1980). *Warren* is factually indistinguishable from the instant case. In *Warren,* the debtor filed a bankruptcy petition seeking relief under the Bankruptcy Code after two creditors obtained judgments against him and levied garnishment liens against his wages. The bankruptcy court ordered the creditors to release the liens as to future wages, and the creditors appealed. In affirming the bankruptcy court, the appellate panel cited *Local Loan.* It discussed at length the importance of the debtor's fresh start and the damaging effect on that fresh start of permitting the garnishment to continue. *Gilpin* also involved a Bankruptcy Code case and an involuntary garnishment lien.[1]

The Credit Union does not address these authorities. Its argument proceeds as follows: First, it notes that state law controls the validity of liens created prior to the commencement of a bankruptcy case under state law. It contends (and the Debtor does not dispute) that the Garnishment Lien was valid under state law when the bankruptcy case was filed.

Next, the Credit Union notes that the Garnishment Lien was not avoided in the bankruptcy case. Again, there is no dispute concerning this factual contention.[2] Finally, the Credit Union contends that liens that are valid under state law when the bankruptcy is filed and that are not avoided in the bankruptcy case survive the bankruptcy process unaffected. This is the weak link in the Credit Union's argument. The Credit Union has cited no authority supporting the application of this principle to permit a lien obtained pre-petition to attach to property obtained by the debtor post-petition after the underlying debt has been discharged.

The cases cited by the Credit Union in support of its contentions are all distinguishable. They all involve pre-petition liens that attached to property in existence prior to the discharge of the underlying debt. In its original brief, the Credit Union relied principally on the recent case of *In re Hilde,* 120 F.3d 950 (9th Cir.1997). The issue presented in *Hilde* was whether a lien on a judgment debtor's nonexempt personal property created under state law by service on the debtor of an order of examination was unperfected and thus avoidable by the bankruptcy trustee pursuant to 11 U.S.C. § 544(a)(1). The *Hilde* court held that lien was perfected and was thus not avoidable. However, the property to which the lien attached was property of the estate. There was no dispute that the lien had attached to the specific personal property before the commencement of the case.

In its supplemental brief, the Credit Union cited legislative history and two additional cases as further support for its position: i.e., the Legislative Commission Comment to Cal.

---

1. The facts and issues in *Gilpin* are somewhat more complex. However, the basis for its decision was essentially the same. In *Gilpin,* the debtors filed originally under chapter 13 of the Bankruptcy Code. Thereafter, they incurred a post-petition debt for rent. After obtaining relief from stay, the landlord obtained a judgment against the debtors and levied on the wages of one of the debtors. In response, the debtors converted their case to chapter 7 and asked the bankruptcy court to reimpose the stay. The Court granted their request. It noted that, pursuant to section 348(d), upon conversion of the case, the post-petition debt became a pre-petition debt and thus dischargeable. Citing *Local Loan,* the Court concluded that the garnishment lien terminated when the case was converted because permitting the landlord to continue to enforce a discharged debt would destroy the debtors' fresh start.

2. Although not central to its argument, the Credit Union also appears to contend that the Garnishment Lien could not have been avoided as a preference because the EWO was served more than 90 days before the petition date. *See* 11 U.S.C.A. § 547(b)(4)(West 1993). This is not necessarily true. The cases are in conflict over whether a garnishment lien that is levied more than 90 days before the bankruptcy case is filed may be avoided as a preference as to those wages earned within the last 90 days. Some courts have held that it may not be. *See In re Riddervold,* 647 F.2d 342 (2d Cir.1981). Others have held that it may be. *See In re Carlsen,* 63 B.R. 706 (Bankr.C.D.Cal.1986). The Court's analysis of the issue presented in this case is consistent with the latter view.

Civ.Proc.Code § 706.029(West 1987); *In re County of Orange*, 189 B.R. 499 (C.D.Cal. 1995); and *Matter of Pacific Far East Line, Inc.*, 654 F.2d 664 (9th Cir.1981). The Legislative Commission Comment simply states that: "The [wage garnishment] lien may give the levying creditor priority over competing claims by third parties (e.g. in bankruptcy)...." This comment has no relevance to the issue presented here. It is clearly accurate as applied to property to which a garnishment lien has attached prior to commencement of the bankruptcy case. There is no indication that the comment was intended to apply to property obtained by the debtor after the underlying debt had been discharged. *Pacific Far East Line* does not support the Credit Union's position either. The issue presented in *Pacific Far East Line* was whether a law firm that had been employed by the debtor pre-petition on a contingent fee basis could claim a charging lien on the proceeds of a settlement received during the chapter XI case. The Creditors' Committee contended that an attorneys' charging lien did not come into effect until the settlement proceeds were paid post-petition. Then applicable law did not permit the attorney to be retained during the chapter XI case on a contingent fee basis. Therefore, the Committee argued, the claim for attorneys' fees was unsecured.

The Ninth Circuit held that, for priority purposes, the lien came into existence prepetition, when the debtor entered into contingent fee agreement, even though it did not attach to the settlement proceeds until after the bankruptcy case was filed. This holding arguably supports the proposition that a lien created pre-petition may attach to property obtained by the bankruptcy estate post-petition. However, the property in question in this case—the debtor's post-petition wages—will have been obtained by the post-petition debtor, not by the bankruptcy estate. *See* 11 U.S.C.A. § 541(a)(6)(West 1993)(stating that the bankruptcy estate does not include debt-

or's post-petition wages). Moreover, the property in question will have been obtained after the underlying debt has been discharged. The attorneys' claim in *Pacific Far East Line* had not been discharged at the time the settlement proceeds were received.[3]

For similar reasons, *County of Orange* is also inapposite. In that case, the debtor, Orange County, had issued certain tax and revenue notes pursuant to California Government Code §§ 53850–53858. Section 53856 permits the County to pledge certain types of assets as security for the notes. It provides that the obligations evidenced by the notes would be a first lien and charge against the first moneys received from this category of assets. After the debtor filed its chapter 9 bankruptcy petition, the debtor stopped making payments under the notes from the pledged funds. The pledgees moved for relief from automatic stay to file an action in state court to compel the County to continue making the payments.

The debtor contended that 11 U.S.C. § 552(a) applied to cut off the pledgees' lien as to future collections. The bankruptcy court agreed and denied the pledgees' motion for relief. The district court reversed. It held that the lien in question was a statutory lien, not a security interest, and that § 552(a) applied only to security interests. *Id.* at 502. It further held that statutory liens survived bankruptcy unless avoided pursuant to 11 U.S.C. § 545. *Id.* at 500. It remanded the proceeding to the bankruptcy court for the purpose of determining whether adequate protection could be provided to the pledgees. *Id.* at 505.

As in *Pacific Far East Line,* and unlike the instant case, in *County of Orange* the underlying debt had not been discharged. In a chapter 9 case, as in a chapter 11 case, the debtor is not discharged until the plan is confirmed. 11 U.S.C.A. § 944(b)(West 1993). Until the debtor receives a discharge, any future revenues would constitute property of the bankruptcy estate to which the pledgees'

---

**3.** It is also debatable whether the charging lien was unsecured at the time the bankruptcy case was commenced. Arguably, the charging lien attached to the debtor's cause of action. The settlement proceeds were simply the proceeds of that cause of action. *See In re Prudence*, 96 F.2d 157 (2d Cir.1938), *cited in Pacific Far East Line,* 654 F.2d at 668, noting that an attorney employed by a debtor had "as security for his fees a charging lien on his client's cause of action.... [and that] Bankruptcy does not invalidate such liens." *Prudence,* 96 F.2d at 160.

lien, still supported by an undischarged debt, could attach.

Second, the Garnishment Lien is a judicial lien, not a statutory lien. The Bankruptcy Code defines a "statutory lien" as a "lien arising solely by force of a statute on specified circumstances or conditions...." 11 U.S.C.A. § 101(53)(West 1993). It defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding...." 11 U.S.C.A. § 101(36)(West 1993). The Garnishment Lien was obtained by a judgment and levy and therefore qualifies as a judicial lien.

An issue similar to that presented here was addressed in *In re Thomas*, 102 B.R. 199 (Bankr.E.D.Cal.1989). In *Thomas*, a creditor obtained a judgment against an individual and recorded an abstract of judgment in the County Recorder's Office. Pursuant to section 697.310(a) of the California Code of Civil Procedure, the recordation created a lien on any real property owned by the judgment debtor in that County. However, at the time the abstract was recorded, the judgment debtor owned no real property. The judgment debtor filed a chapter 7 bankruptcy petition and discharged the judgment debt. However, the judgment debtor took no action to expunge the lien.

After filing the bankruptcy case and receiving a discharge of the judgment debt, the judgment debtor acquired real property in the county in which the abstract had been recorded. Section 697.340(b) of the California Code of Civil Procedure provides that, if any real property is acquired after the judgment lien is recorded, the judgment lien attaches to the property at the time it is acquired. When the debtor attempted to sell the subsequently acquired real property, the judgment lien purportedly securing the discharged debt appeared on the title report as a lien that was required to be paid in order to convey clear title.

The judgment lien creditor in *Thomas* made the same argument made by the Credit Union in this case. It contended that, because the judgment lien had not been avoided in the bankruptcy case, it survived the bankruptcy as a valid lien. The bankruptcy court rejected this contention as follows:

> The California courts have long recognized the maxim that a lien cannot survive (much less be created in the first place) absent the existence of an enforceable underlying obligation. [Citations omitted.]....
>
> Working chronologically, this court finds that no lien could have existed as a matter of law on the date the Debtors filed their respective petitions in bankruptcy because of the absence of attachable property at that date. Conversely, no judgment lien could have been created post-discharge even though the Debtors had acquired attachable property because the underlying judgment was previously discharged and rendered void. Consequently, this court must find that the FTC lien currently encumbering the proceeds from sale of the Debtors' residence is void and unenforceable.

*Id.* at 201 (footnotes omitted).

This Court views the *Thomas* court's logic as unassailable. The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C.A. § 101(37)(West 1993). For a lien to exist, both the property and the obligation must exist at the same time. A lien may not "survive" bankruptcy unless it first exists. Here, the Garnishment Lien and the debtor's post-petition wages never existed at the same time and therefore the Garnishment Lien may not be said to "survive" the debtor's bankruptcy.

## CONCLUSION

For the reasons stated above, the Credit Union's motion for relief from the automatic stay is denied, and the Credit Union is directed to release the Garnishment Lien with respect to the debtor's post-petition wages.