**In re Cynthia J. CHETTO, Debtor.**

**Michael Johnson, D.C., Plaintiff,**

**v.**

**Cynthia J. Chetto, Defendant.**

**Bankruptcy No. 00 B 21384.**

**Adversary No. 01 A 00500.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 2002.

David J. Axelrod & Associates, Chicago, IL, for Plaintiff.

William J. Flotow, Palatine, IL, for Defendant.

## MEMORANDUM OPINION

CAROL A. DOYLE, Bankruptcy Judge.

The court has reconsidered its oral ruling of October 31, 2001 denying the debtor's motion to dismiss the complaint in this adversary proceeding. The question presented is whether a wage deduction order entered more than ninety days before the filing of a Chapter 7 bankruptcy case may be enforced postpetition when the underlying debt has been discharged. The court concludes that, under *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the answer is no.

### A. *Background*

Plaintiff Michael Johnson obtained a judgment against Cynthia Chetto ("debtor") in state court. On March 16, 2000, Johnson served a citation to discover assets ("Citation") upon the debtor's employer, thereby creating a lien on all personal property of the debtor in the employer's possession. *See* 735 ILCS 5/2–1402(m)(2) (West Supp.1996); *Cacok v. Covington,* 111 F.3d 52, 54 (7th Cir.1997). On March 24, 2000, the Circuit Court of Lake County, Illinois entered a Judgment Turnover Order ("Turnover Order"), which required the debtor's employer to withhold fifteen percent of her wages until the judgment is satisfied. On July 24, 2000, the debtor filed this Chapter 7 case. On October 27, 2000, the debtor obtained a discharge pursuant to 11 U.S.C. § 727.

Johnson filed an Adversary Complaint ("Complaint") seeking an order finding that the lien created by the Citation survived the Chapter 7 filing, and allowing the debtor's employer to continue withholding wages pursuant to the Turnover Order. The debtor filed a motion to dismiss the adversary proceeding. In October 2001, the court denied the debtor's motion based on its interpretation of *In re Coppie,* 728 F.2d 951 (7th Cir.1984). In March 2002, Johnson presented a Motion for Default

Judgment, which was unopposed. The court stated orally that it intended to grant the motion. However, before Johnson's counsel presented the order granting his motion for default judgment, the court *sua sponte* decided to reconsider its holding on the motion to dismiss to determine whether it was consistent with the decision of the U.S. Supreme Court in *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The court issued an order giving both parties an opportunity to submit briefs on this question. Eventually, Johnson filed a brief opposing the court's *sua sponte* reconsideration of the motion to dismiss. Upon further consideration, the court grants the debtor's motion to dismiss.

### B. *Reconsideration of the Motion to Dismiss*

■ As a preliminary matter, Johnson asserts that the court has no legal basis for reconsidering its previous ruling on the motion to dismiss. However, courts have the inherent power to reconsider rulings until a final judgment is entered. *Telesphere Liquidating Trust v. Haan,* No. 96 C 5845, 1996 WL 617415, at *4 (N.D.Ill. Oct.24, 1996) (citing *Ruehman v. Village of Palos Park,* 842 F.Supp. 1043, 1062–63 (N.D.Ill.1993)). Since no final judgment was entered in the case, the court is free to reconsider its decision.

### C. *Enforceability of Wage Deduction Order After Discharge*

■ Johnson argues that a Chapter 7 discharge does not invalidate a lien created by a Citation to Discover Assets. He therefore asserts that a discharge of the underlying debt does not prohibit the collection of wages pursuant to a Turnover Order, relying on *In re Coppie,* 728 F.2d 951 (7th Cir.1984). In *Coppie,* the Seventh Circuit held that, under Indiana law, wages held pursuant to a prepetition turn-

over order could not be recovered as a preference under 11 U.S.C. § 547. *Id.* at 953. The court stated that once the state court order imposed a continuous lien on the debtors' future income, "the debtors no longer had a property interests in 10% of their future salaries." *Id.* at 952–53. The court therefore concluded that the transfer of 10% of the debtor's wages to the garnishment plaintiff took place when the order creating a continuous lien was entered, which was before the ninety day preference period under 11 U.S.C. § 547(b). Therefore, the trustee could not avoid the transfer of prepetition wages to the garnishment plaintiff. Although this court previously relied on the *Coppie* decision in denying the debtor's motion to dismiss, upon reconsideration, the court finds that *Coppie* is not controlling in this case.

In the various briefs submitted on the debtor's motion to dismiss, neither party cited the controlling case from the U.S. Supreme Court, *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). *Local Loan* was very similar to this case. A creditor had a lien created by a prepetition voluntary assignment of wages. The creditor argued that the lien survived the bankruptcy discharge. Under Illinois law at the time, an assignment of wages constituted an enforceable lien on a debtor's future wages. However, the Supreme Court held that wages earned by a debtor after a discharge belonged to the debtor alone, regardless of state law on the issue. The court reasoned that, because the postpetition wages did not exist at the time the petition was filed and the underlying debt was discharged in the bankruptcy, there was no basis for imposing a lien on the postpetition wages. The court found that to hold otherwise would violate the "clear and unmistakable policy of the Bankruptcy Act" to give the debtor a fresh start and that "local rules subversive to that result" are not controlling. The court stated that it left to later cases whether liens on other kinds of after-acquired property survive a discharge. *Id.* at 244–45, 54 S.Ct. 695.

Local Loan is binding authority even though the present Bankruptcy Code was enacted after *Local Loan* was decided. *See In re Miranda Soto,* 667 F.2d 235, 237 (1st Cir.1981). The court recognizes that the *Coppie* decision contains strong language regarding the creditor's entitlement to future wages once a wage garnishment order is entered under Indiana law, and that Illinois law is now very similar to the Indiana law in effect at the time of the *Coppie* decision.[1] However, *Coppie* was decided in the context of a prepetition preference. It did not address postpetition wages earned by the debtor and the effect of a discharge on a lien on future wages. Because the case involved only prepetition wages, the Seventh Circuit had

---

1. Section 2–1402 of the Illinois Code of Civil Procedure provides the method by which a judgment creditor may issue a citation to discover assets against a third party in possession of property belonging to a judgment debtor. *See* 735 ILCS 5/2–1402. Section 2–1402(m) states that proper service of the citation creates a lien on that property. Illinois Supreme Court Rule 277 prescribes the procedures for implementing Section 2–1402. Rule 277(f) specifically provides that although the lien automatically terminates six months from the date of the citation respondent's first personal appearance (unless extended by the court), "[o]rders for the payment of money continue in effect notwithstanding the termination of proceedings until the judgment is satisfied or the court orders otherwise." Ill. S.Ct. Rule 277(f). In other words, a turnover order is effective against a judgment debtor until the debt in question is fully satisfied. This comports with the Indiana garnishment statute at issue in *Coppie,* which provided for a continuous lien on ten percent of a judgment debtor's wages until the judgment was satisfied. *See Coppie,* 728 F.2d at 952–53 (citing Ind.Code § 34–1–11–21 (1976) (repealed 1998)).

no reason to address the *Local Loan* decision.

■ Johnson correctly asserts that a debtor's interest in property is generally determined in accordance with state law. The Supreme Court held in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), that bankruptcy courts generally look to state law to determine a party's property rights, "[u]nless some federal interest requires a different result." *Id.* at 55, 99 S.Ct. 914. In this case, as the *Local Loan* court expressly held, the overriding "fresh start" federal policy of the bankruptcy laws controls over state law on wage garnishments and requires that a wage earner keep her wages earned postpetition when the underlying debt supporting the lien is discharged in the bankruptcy. Other courts addressing the issue have applied *Local Loan* in similar circumstances and concluded that a lien on wages does not survive a Chapter 7 discharge. *E.g., In re Baker,* 217 B.R. 609 (Bankr. N.D.Cal.1998); *In re Warren,* 7 B.R. 201 (Bankr.N.D.Ala.1980); *see also, In re Chavez,* 257 B.R. 341 (Bankr.D.N.M.2001) (preference case rejecting *Coppie* analysis and applying *Local Loan* ).

Johnson argues that *Local Loan* is distinguishable because it involved a voluntary assignment of future wages, while the present matter involves an involuntary garnishment lien. However, the Supreme Court did not base its holding on the fact that the assignment of wages was voluntary. Rather, the Court broadly held that future earnings cannot be considered "property" pursuant to the bankruptcy laws until those earnings are in existence, and that a lien on subsequent earnings is extinguished upon discharge. *Local Loan,* 292 U.S. at 243, 54 S.Ct. 695. The Court's emphasis on the "clear and unmistakable policy" of the bankruptcy laws—specifically, the importance of a fresh start for the debtor following discharge—applies with equal if not greater force to an involuntary lien against future wages as it does to a voluntary lien. *See id.* at 244, 54 S.Ct. 695.

The court notes that *Local Loan* is consistent with, and partially codified in, § 524(a) of the Bankruptcy Code. *See* 11 U.S.C. § 524(a)(1). Under § 524(a), a discharge voids any judgment obtained with respect to any discharged debt. The citation lien secures payment of the judgment. Under Illinois law, the lien terminates when the judgment is satisfied. Once the judgment is voided, it can no longer support a lien that attaches to property acquired after the judgment has become void. *Cf. Bank of Matteson v. Brown,* 283 Ill.App.3d 599, 605–07, 669 N.E.2d 1351, 1355–56, 218 Ill.Dec. 825, 829–30 (1996) (final but unenforceable judgment cannot support supplementary proceedings). Therefore, Johnson's citation lien cannot attach to wages earned after the judgment was voided by the debtor's discharge.

### D. *Conclusion*

After considering the holdings of both *Coppie* and *Local Loan,* the court concludes that any prepetition wages collected pursuant to the Turnover Order would not constitute property of the estate. However, Mr. Johnson's lien does not attach to any wages earned by the debtor beginning on the date of filing of the bankruptcy petition, and his lien was extinguished in accordance with *Local Loan.* The court therefore grants the debtor's motion to dismiss this adversary proceeding.