**In re Jeffery B. FELDMAN, Debtor.**

**No. 03–49726–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 19, 2003.

Charles J. Schneider, Livonia, MI, for Debtor.

*Opinion Regarding Debtor's Motion for Sanctions*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on a motion for sanctions filed by the debtor, Jeffery Feldman, against Credit Acceptance Corp. and its attorney, Howard Alan Katz, for violation of the automatic stay. Katz filed an objection, but CAC did not. The Court conducted a hearing on October 27, 2003, and took the matter under advisement.

I.

On October 8, 2001, CAC filed a collection action against Feldman and on December 3, 2001, obtained a default judgment. On January 27, 2003, CAC served a writ of garnishment on Feldman's employer, BFC Management Co. BFC operates Cheetah's, the club where Feldman worked as a D.J. In response to the writ of garnishment, Cheetah's sent a letter to CAC stating that Feldman worked for tips only so there was no way to garnish his wages. (See Feldman's Motion, Ex. D.) CAC then filed a motion in state court to review the business records of the club.

Shortly thereafter, on April 4, 2003, Feldman filed a chapter 7 petition. CAC was listed as a creditor and received notice of the bankruptcy petition. CAC proceeded with its motion against BFC to review the business records of the club. The hearing was held on May 19, 2003. No representative for BFC appeared. A judgment was entered against BFC in the amount of $3,168.65 for its failure to comply with Michigan's garnishment laws and procedures. On June 24, 2003, a court officer executed on the judgment and the club paid $3,309.99. As a result, on July 1, 2003, CAC filed a satisfaction of judgment for Feldman.

II.

Feldman contends CAC and its attorney willfully violated the automatic stay by obtaining the garnishment judgment against Feldman's employer and by collecting on that judgment.

Katz contends that no action was taken against Feldman after the bankruptcy was filed and that collection was only pursued against BFC. He argues that the automatic stay does not bar a creditor from pursuing legal action against an employer for its own failure to comply with state garnishment law.

III.

Katz relies primarily on *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750 (Bankr.E.D.Tenn.2002), in support of his position that an action against the debtor's

employer does not violate the automatic stay. In *Kanipe,* to collect its judgment against the debtor, a creditor had a garnishment served on the debtor's employer on March 22, 2001. The garnishment directed the employer to disclose by April 27, 2001, whether it owed any wages to the debtor. The employer failed to answer the garnishment. On May 11, 2001, the debtor filed bankruptcy. However, on January 3, 2002, the creditor obtained a conditional judgment against the employer in the amount of $8,545.46. The conditional judgment stated that it would become final if the employer failed to show good cause otherwise on or before March 11, 2002.

The debtor argued that the creditor's actions in obtaining the judgment against his employer violated the discharge injunction. The creditor responded that the failure of the employer to timely answer the garnishment established its separate liability pursuant to Tenn.Code Ann. § 29–7–114, and that therefore its collection was not an action against the debtor. The court noted that there was a split in authority on this issue:

> When confronted with the issue before this court, whether a judgment creditor's postpetition acts against a debtor's employer for failure to honor a prepetition garnishment violated the discharge injunction (or automatic stay), the courts have disagreed. The majority conclude that no violation has occurred because the actions are against the employer solely based on its failure to comply with the wage deduction statutes and do not involve the debtor or property of the estate. *See In re Schneiderman,* 254 B.R. 296 (Bankr.D.D.C.2000) (dicta); *In re Sowers,* 164 B.R. 256 (Bankr.E.D.Va. 1994); *In re Waltjen,* 150 B.R. 419 (Bankr.N.D.Ill.1993); *In re Gray,* 97 B.R. 930 (Bankr.N.D.Ill.1989); *United Guar. Residential Ins. Co. v. Dimmick,* 916 P.2d 638 (Colo.Ct.App.1996). A minority of courts disagree, viewing the process as "simply an indirect proceeding or act to collect, assess, and recover a claim against the debtor." *See O'Connor v. Methodist Hosp. of Jonesboro, Inc. (In re O'Connor),* 42 B.R. 390, 392 (Bankr.E.D.Ark.1984). *See also Univ. of Alabama Hosps. v. Warren (Matter of Warren),* 7 B.R. 201, 205 (Bankr. N.D.Ala.1980) (allowing the creditor to proceed against the debtor's employer will undoubtedly "indirectly affect the debtor's job and future earnings and his right to earn" which is "in direct contravention of the 'fresh start' provided by the Federal Bankruptcy Code"). *Cf. Ganz v. Griffith,* 1996 WL 122184 (E.D.Pa.Mar.19, 1996) (court refused to allow postpetition action against garnishee as rights of garnishor in property being attached were not established at time of bankruptcy filing).

*Id.* at 758.

The court then concluded that on the facts before it, the discharge injunction was not violated because the prosecution of the judgment was against the employer solely due to its failure to answer or otherwise respond to the garnishment.

This Court rejects the holding in *Kanipe* and in what it describes as the majority of the cases on this issue. Those cases focus on the wrong question. It is simply irrelevant whether the creditor's postpetition act to obtain a judgment against the employer is an act to collect on the employer's liability. The relevant question under § 362(a) is whether that act is an act to collect on the *debtor's* liability. Surely the answer to that question is yes, that act is an act to collect on the debtor's prepetition debt. Three facts make this clear.

First, there would be no garnishment judgment against the employer absent the underlying debt.

Second, the employer's payment of the garnishment judgment has the effect of transferring the claim from the original creditor to the employer, in other words, upon payment by the employer, the debtor would then owe the employer on the claim. MCR 3.101(O) provides:

(1) Judgment may be entered against the garnishee for the payment of money or the delivery of specific property as the facts warrant. A money judgment against the garnishee may not be entered in an amount greater than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment. Judgment for specific property may be enforced only to the extent necessary to satisfy the judgment against the defendant.

(2) **The judgment against the garnishee discharges the garnishee from all demands by the defendant for the money paid or property delivered in satisfaction of the judgment.** If the garnishee is sued by the defendant for anything done under the provisions of these garnishment rules, the garnishee may introduce as evidence the judgment and the satisfaction.

MCR 3.101(O) (emphasis added). Thus, the employer can deduct from any amount it owes the debtor the amount it has paid to the creditor.

Third, and perhaps most important, the employer's payment on the garnishment judgment requires the creditor to file a satisfaction of the judgment against the debtor.

Therefore, the Court concludes that the respondent's acts to obtain and collect on a garnishment judgment against BFC were acts to enforce CAC's claim against Feldman and that these acts violated the automatic stay. *See* 11 U.S.C. § 362(a)(2) and (a)(6).

At the hearing, Feldman sought to have the money that BFC paid to CAC turned over to him rather than to BFC, on the grounds that BFC deducted that amount from amounts it owed to Feldman. The Court requested Feldman to file an affidavit and supporting documentation to establish these facts. However, nothing was filed. Accordingly, the Court will order CAC to return the funds to BFC Management.

An appropriate order will be entered.