KENOSHA HOSPITAL & MEDICAL CENTER, Plaintiff-Respondent,

v.

Jesus E. GARCIA, Defendant,

RICHTER INDUSTRIES, INC., Garnishee-Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–1727. Oral argument December 17, 2003.—Decided July 8, 2004.*

2004 WI 105

(Also reported in 683 N.W.2d 425.)

Wilcox, J., dissents.

For the garnishee-defendant-appellant-petitioner there were briefs by *Christopher W. Rose* and *Rose & Rose,* Kenosha, and oral argument by *Christopher W. Rose.*

For the plaintiff-respondent there was a brief by *Ronald L. Diersen* and *Rizzo & Diersen, S.C.,* Kenosha, and oral argument by *Ronald L. Diersen.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals affirming the judgment and order of the Circuit Court for Kenosha County, David M. Bastianelli, Judge.[1] The circuit court granted a judgment in favor of the creditor, Kenosha Hospital and Medical Center, against the garnishee, Richter Industries, Inc., for the unpaid debt of the debtor, Jesus E. Garcia. The circuit court also entered an order denying Richter Industries' motion to vacate the judgment.

¶ 2. The court of appeals affirmed the judgment of the circuit court, concluding that the notice of motion for judgment was properly served upon the garnishee, satisfying the requirements of Wis. Stat. § 801.14(2) (2001–02)[2] pertaining to the service of pleadings and other papers after an action has been commenced.[3] The court of appeals further concluded that the automatic stay provisions for bankruptcy provided under 11

---

[1] *Kenosha Hosp. & Med. Ctr. v. Garcia,* 2003 WI App 142, 265 Wis. 2d 900, 667 N.W.2d 851.

[2] All references to the Wisconsin statutes are to the 2001–02 statutes unless otherwise indicated.

[3] *Kenosha Hosp.,* 265 Wis. 2d 900, ¶¶ 9, 21.

341

U.S.C. § 362(a) did not prohibit Kenosha Hospital from pursuing a claim against the garnishee Richter Industries under Wis. Stat. § 812.41 because the garnishment action gave rise to a new and independent claim against the garnishee.[4] The court of appeals further held that the circuit court did not erroneously exercise its discretion in refusing to vacate the judgment.[5]

¶ 3. Three questions are presented by Richter Industries:

(1) When a creditor (here Kenosha Hospital) commences an earnings garnishment action under Wis. Stat. § 812.35, must service of the notice of motion for judgment against the garnishee-employer (here Richter Industries) for liability under § 812.41 be served on the garnishee under § 801.11(5), or may service be made under § 801.14(2)?

(2) Did the circuit court err in refusing to vacate the judgment against the employer-garnishee?

(3) May a circuit court enter a judgment against an employer-garnishee in an earnings garnishment action when the debtor (here Garcia) has filed a petition in bankruptcy and there is an automatic stay under 11 U.S.C. § 362(a)?

¶ 4. For the reasons set forth, we reverse the decision of the court of appeals and answer the questions presented as follows:

(1) Wisconsin Stat. § 801.11(5) governs service of the notice of motion for judgment under § 812.41, and service in the present case did not, on the record before us, satisfy § 801.11(5).

---

[4] *Id.* at ¶ 21.

[5] *Id.*

(2) Because the circuit court did not apply the proper law relating to service, it erred in refusing to vacate the judgment.

(3) The automatic stay provisions of 11 U.S.C. § 362(a) did not bar a judgment against the garnishee Richter Industries for the amount of the debtor's debt.

I

¶ 5. The facts of this case are not in dispute and are set forth here and in the decision of the court of appeals. Jesus E. Garcia became indebted to Kenosha Hospital in the sum of $20,888.85 for unpaid medical services, and Kenosha Hospital filed a judgment against Garcia on August 28, 2001, for the principal of the debt plus costs and disbursements as authorized by law.

¶ 6. On September 25, 2001, Kenosha Hospital commenced an earnings garnishment action against Garcia and the garnishee, Richter Industries, to collect the unsatisfied civil judgment. The notice of the garnishment action was served upon the garnishee's payroll department at 4910 70th Avenue, Kenosha, Wisconsin, by certified mail pursuant to Wis. Stat. § 812.35(3)(a)(2) on October 2, 2001. Erik Richter signed the return receipt. On December 17, 2001, Kenosha Hospital moved the circuit court for a judgment against Richter Industries for the amount of Garcia's debt plus the cost of the garnishment based on Richter Industries' failure to respond to the notice of garnishment.

¶ 7. The earnings garnishment form set out the amount that Garcia owed to Kenosha Hospital and instructed Richter Industries how to effect the garnishment. The earnings garnishment form did not advise

Richter Industries that it might be held liable for the full amount of Garcia's debt to Kenosha Hospital.

¶ 8. On December 19, 2001, the notice of motion for judgment against Richter Industries was served by a process server on Richter Industries at its Kenosha, Wisconsin plant by personal service on a woman who stated that she was a secretary and was the "person in charge." The woman would not give her name.[6]

¶ 9. On January 2, 2002, a hearing was held on the motion for a judgment against Richter Industries. Richter Industries did not appear at the hearing, and the minutes of the circuit court reflect that the circuit court held Richter Industries responsible for the amount owed by Garcia. On January 7, 2002, at 1:45 p.m., Garcia filed for bankruptcy. On the same afternoon at 4:00 p.m., the circuit court filed an order of judgment awarding Kenosha Hospital a judgment against Richter Industries for the amount of Kenosha Hospital's judgment against Garcia plus post-judgment costs "less the sum of $527.64 paid by the Garnishee."[7]

¶ 10. On January 10, 2002, a notice of bankruptcy was filed on behalf of Garcia in the Kenosha County Circuit Court, explaining that Kenosha Hospital had been named as a creditor. The notice stated that "[t]he Bankruptcy Code prohibits further prosecution of this

---

[6] The motion for judgment states the following:

The Plaintiff, by Ronald L. Diersen its Attorney, moves the court for a judgment against the Garnishee, Richter Industries, Inc., in the amount of the judgment against the Defendant, Jesus E. Garcia, plus the cost of the Garnishment and this motion. This motion is based on the Garnishee's failure to respond to the garnishment received by the Garnishee on October 2, 2001.

[7] Although the court of appeals stated that Richter Industries held no earnings of Garcia, the record shows that the sum of $527.64 had been garnished by Richter Industries.

matter without the specific approval of the United States Bankruptcy Court" for the Eastern District of Wisconsin.

¶ 11. In a notice of motion filed on May 10, 2002, Richter Industries moved to vacate the judgment. It argued that service of the notice of motion for judgment was improper, claiming that service was made at the plant located in Kenosha, Wisconsin, rather than at Lake Forest, Illinois, where the registered agent and office of the corporation were located. It also argued that pursuant to 11 U.S.C. § 524(a)(1) the underlying judgment against Garcia was void, and that since the judgment entered in favor of Kenosha Hospital against Richter Industries was predicated on the void judgment against Garcia, the judgment against Richter Industries was also void. Richter Industries in effect claims that as a result of the bankruptcy stay and improper service, the judgment against it should be vacated.

¶ 12. The circuit court considered Richter Industries' motion in a hearing on June 12, 2002. On June 20, 2002, it issued an order denying Richter Industries' motion to vacate the judgment, stating that the judgment granted in favor of Kenosha Hospital against Richter Industries on January 7, 2002, was to remain in effect. The garnishee, Richter Industries, timely appealed to the court of appeals, which affirmed the judgment and order of the circuit court. We granted review.

II

¶ 13. The first and third issues raised on review are questions of law requiring the interpretation of statutes. The interpretation of statutes is a question of

law that this court decides independently of the circuit court and court of appeals, but benefiting from the analyses of both.[8]

¶ 14. The second issue involves the circuit court's refusal to vacate the judgment against Richter Industries. Richter Industries' motion to vacate does not cite a statute or rule under which it was proceeding. We assume that the motion was made under Wis. Stat. § (Rule) 806.07(1) seeking relief from a judgment, and we examine the circuit court's order refusing to vacate a judgment for the erroneous exercise of discretion.[9]

¶ 15. This court has often said that "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purposes of achieving a reasonable determination."[10] An appellate court will affirm a circuit court's discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[11] Therefore, the record on appeal must "reflect

[8] *See State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

[9] *See Ness v. Digital Dial Communications, Inc.,* 227 Wis. 2d 592, 599–600, 596 N.W.2d 365 (1999).

[10] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[11] *Long v. Long,* 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995). *See also State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985); *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case."[12] "If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."[13]

## III

¶ 16. The first question presented is whether service of the notice of motion for judgment complied with the statutes.

¶ 17. To answer this question, we must examine the interplay of the following statutes: Wis. Stat. §§ 812.35, 812.41, 812.31, 801.11(5), and 801.14(2).

¶ 18. We start with Wis. Stat. § 812.35, which governs the commencement of an earnings garnishment action. Earnings garnishment procedures are different from other garnishment proceedings.

¶ 19. Under Wis. Stat. § 812.35(1), in order "[t]o commence an earnings garnishment proceeding, the judgment creditor shall file with the clerk of courts a garnishment notice under s. 812.44(2)." After the clerk of courts receives the garnishment notice, the clerk of courts issues two earnings garnishment forms for each garnishee.[14]

¶ 20. One of the two statutorily prescribed earnings garnishment forms must be served upon the

---

[12] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

[13] *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). *See also In re Settlement for Personal Injuries of Konicki,* 186 Wis. 2d 140, 150, 519 N.W.2d 723 (Ct. App. 1994) ("[A] trial court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law.").

[14] Wisconsin Stat. § 812.35(2) provides:

347

debtor, while the other is served upon the garnishee.[15] The earnings garnishment form advises the garnishee of the amount of the debt owed by the creditor but does not advise the garnishee of its potential liability for failing to adhere to the notice.

¶ 21. The acceptable methods of service for the earnings garnishment form for the garnishee as set forth in Wis. Stat. § 812.35(3)(b) are:[16] first class mail; certified mail, return receipt requested; any means

---

Upon receipt of the notice under sub. (1) and payment of the fee under s. 814.62(1), the clerk of courts shall issue 2 earnings garnishment forms under s. 812.44(3) for each garnishee. Blank earnings garnishment forms may be issued, but they shall carry the court seal. A circuit court may permit, by rule, the clerk to issue earnings garnishment forms after payment of the fee but before the filing of the notice under sub. (1). That circuit court rule shall require the notice to be filed with the court at a later time, but no later than 5 business days after the date the garnishee is served under sub. (3).

[15] Although no garnishment form is in the record, at oral argument counsel for Kenosha Hospital explained that he mailed an earnings garnishment form provided by the clerk to Richter Industries.

[16] Wisconsin Stat. § 812.35(3) provides:

(a) Within 60 days after filing the notice under sub. (1) and as specified under sub. (4)(c), the creditor shall serve one of the 2 earnings garnishment forms upon the debtor by one of the following means:

1. First class mail.

2. Certified mail, return receipt requested.

3. Any means permissible for the service of a summons in a civil action, other than publication.

(b) Within 60 days after filing the notice under sub. (1), the creditor shall serve one of the 2 earnings garnishment forms upon the garnishee by one of the means listed under par. (a)1 to 3, or by other means if the garnishee signs an admission of service.

permissible for the service of a summons in a civil action, other than publication; and any other means if the garnishee admits service. Service in the present case was by certified mail in accordance with the statute. The legislature apparently sought to simplify the process of initiating earnings garnishment proceedings. The validity of the service of the earnings garnishment form by certified mail is not in dispute.

¶ 22. While Wis. Stat. § 812.35 governs service of the earnings garnishment form, § 812.41 governs a creditor's action against a garnishee who fails to pay over funds.[17] That statute provides that a "creditor may,

[17] Wisconsin Stat. § 812.41(1) provides in relevant part:

> If the garnishee fails to pay over funds to which the creditor is entitled under this subchapter within the time required under s. 812.39, the creditor may, upon notice to all of the parties, move the court for judgment against the garnishee in the amount of the unsatisfied judgment plus interest and costs.

The parties assume that Wis. Stat. § 812.41 applies in the present case and seem to treat the statute as governing garnishees who default by not responding to the court filings. Section 812.41, however, governs a notice of motion when a garnishee fails to pay over funds to which the creditor is entitled. In the present case apparently Richter Industries withheld some of Garcia's earnings and paid them to Kenosha Hospital, all prior to Garcia's filing for bankruptcy. The judgment against Richter Industries credited it with $527.64 as a sum paid by the garnishee. Yet Richter Industries does not dispute the applicability of § 812.41 to the present case.

We cannot determine whether Richter Industries withheld and paid over precisely what it was supposed to pay, too much, or too little. The record is devoid of this information. We cannot reasonably engage, at this stage of the proceedings in this court, in conjecture about what effect this withholding has on the present case. The applicability of Wis. Stat. § 812.41 may be an issue on remand.

upon notice to all of the parties, move the court for judgment against the garnishee in the amount of the unsatisfied judgment plus interest and costs." Section 812.41 thus admonishes the garnishee that if it fails to pay over funds to which the creditor is entitled, a judgment may be entered against the garnishee for the amount the debtor owes the creditor.

¶ 23. The purpose of Wis. Stat. § 812.41 in making the garnishee liable for the entire obligation of the debtor is apparently to induce satisfaction of garnishment by threatening the garnishee with a penalty for the entire amount of the debt owed the creditor, irrespective of what the garnishee itself might owe the creditor.[18] After all, the garnishee, not the creditor, knows how much the garnishee owes the debtor in earnings.

---

Nor do the parties discuss the applicability, if any, of Wis. Stat. § 806.02, which governs default judgments when a defendant fails to appear.

[18] Robert Laurence, *The Supreme Court and the Defaulting Garnishee, Redux: An Essay on McCourt Manufacturing Company v. The Credit Bureau of Fort Smith and a Few of its Predecessors,* 49 Ark. L. Rev. 1, 2 (1996); *Young v. Young,* 547 F. Supp. 1, 4 (W.D. Tenn. 1980) (describing the purpose of a similar Tennessee statute).

Statutes exist in other jurisdictions imposing liability on the garnishee for a debtor's debt that are similar to Wis. Stat. § 812.14. *See, e.g.,* Wash. Rev. Code Ann. § 6.27.200 (West 2003) (on garnishee's failure to answer writ of garnishment within requisite time provided, with proper notice, court may enter default judgment against garnishee for full amount claimed by plaintiff creditor against defendant debtor); Tenn. Code Ann. §§ 29-7-114, 29-7-115 (2003) (if a garnishee fails to appear and answer the garnishment, the garnishee shall be presumed indebted to the creditor for the full amount of the debt and conditional judgment is entered which may then become a final

¶ 24. Section 812.41 does not, however, explicitly provide how a notice of motion for judgment must be served on a garnishee.[19] We therefore turn to Wis. Stat. § 812.31, which in turn directs us to the general rules of practice and procedure in Wis. Stat. chapters 801 to 847, to determine how a notice of motion for judgment must be served on a garnishee in an earnings garnishment action.[20]

¶ 25. Two means of service in chapter 801 may be applicable to the present case. The parties dispute which of these means of service should govern service of a notice of motion for judgment on a garnishee. Richter Industries argues that Wis. Stat. § 801.11(5), governing service of a summons for personal jurisdiction,[21] and

judgment); Ark. Code. Ann. §§ 16–110–401, 16–110–407 (Michie 2003) (a garnishee with notice that fails to answer garnishment action may be held liable for full amount of judgment against debtor); Kan. Stat. Ann. § 60–718(c) (2001) (repealed 2002) (if garnishee fails to answer, the garnishee may be granted judgment for the amount of debt owed to the creditor).

[19] In an earnings garnishment, no summons is served on the garnishee under the statute and none is in the record before us. The judgment against Richter Industries states that "a verified Complaint is on file." No such complaint is in the record before the court.

[20] Wisconsin Stat. § 812.31 states: "Except as otherwise provided in this subchapter, the general rules of practice and procedure in chs. 750 to 758 and 801 to 847 shall apply to actions under this subchapter."

[21] Wisconsin Stat. § 801.11(5) provides for service of a summons on a domestic or foreign corporation as follows:

(5) Domestic or foreign corporations or limited liability companies, generally. Upon a domestic or foreign corporation or domestic or foreign limited liability company:

§ 180.0504, governing service on corporations,[22] set forth the appropriate means of service for a notice of motion for judgment in an earnings garnishment action. In contrast, Kenosha Hospital argues that Wis. Stat. § 801.14(2), governing the service and filing of pleadings and other papers, is the relevant statute governing service of a motion for judgment in an earnings garnishment action.

¶ 26. Richter Industries argues that a notice of motion for judgment is a mandate requiring the appearance of a defendant in an action under penalty of having a judgment entered against it for failing to do so. In other words, Richter Industries contends that the notice of motion for judgment should be treated as the equivalent of a summons and argues that the statutes require personal service of that notice. In sum, according to Richter Industries, the notice of motion for judgment must comply with the statutes governing service of summons and personal jurisdiction, and Wisconsin requires strict compliance with rules of statutory service.[23]

---

(a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.

[22] Wisconsin Stat. § 180.0504(1) provides inter alia that "a corporation's registered agent is the corporation's agent for service of process . . . ." Section 180.0504(4) provides that "this section does not limit or affect the right to serve any . . . notice . . . to be served on a corporation in any other manner permitted by law."

[23] See Dietrich v. Elliot, 190 Wis. 2d 816, 827, 528 N.W.2d 17 (1995). In support of its position that service of the notice of motion for judgment was required in the present case under

¶ 27. Richter Industries argues that to serve the notice of motion like a summons, Kenosha Hospital (1) had to personally serve an officer, director, or managing agent of the corporation either within or without the state;[24] (2) had to leave the notice of motion in the office of an officer, director, or managing agent with the person who is apparently in charge of the office;[25] or (3) had to serve its registered agent in Illinois.[26] Richter Industries argues that Kenosha Hospital did not comply

Wis. Stat. § 801.11(5), Richter Industries relies on *Bar Code Resources v. Ameritech Information Systems, Inc.,* 229 Wis. 2d 287, 599 N.W.2d 872 (Ct. App. 1999). In *Bar Code,* the court of appeals concluded that the service did not comply with statutory service requirements and that the circuit court never obtained personal jurisdiction over the defendant when the plaintiff attempted to initiate an action by delivering a summons to a security guard who worked for a wholly-owned subsidiary corporation of the defendant corporation that was housed in the same building as the defendant.

We disagree with Richter Industries that the *Bar Code* case controls our decision in the present case. *Bar Code* is not directly applicable to this case. The plaintiff in *Bar Code* sought to serve a summons and complaint rather than, as in this case, a notice of motion for judgment in an earnings garnishment proceedings. Wisconsin Stat. § 801.11(5) expressly governs service of a summons, and that section was not followed in the *Bar Code* case. Section 801.11(5) does not expressly govern service of a notice of motion for judgment in an earnings garnishment action.

[24] Wis. Stat. § 801.11(5).

[25] Wis. Stat. § 801.11(5)(a). Wisconsin Stat. § 801.11(5)(c) provides for service "in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant."

[26] Wis. Stat. § 180.1510(1).

with any of these three statutory methods of personal service of a summons and that service was therefore invalid. We agree with Richter Industries that on the basis of this record, it appears that Kenosha Hospital did not comply with any of these three methods of personal service.

¶ 28. The record does not show that the secretary served at the Kenosha plant was an officer, director, or managing agent of the corporation or was in charge of the office of an officer, director, or managing agent of the corporation. Nothing in the record allows us to draw an inference, as Kenosha Hospital apparently would like us to do, that because Erik Richter signed the receipt for the initial garnishment form at the Kenosha plant, it was, in fact, his office.

¶ 29. Nor was personal service made on the registered agent of Richter Industries. Wisconsin Stat. § 180.1510(1) provides that a registered agent of a foreign corporation authorized to do business in Wisconsin is the corporation's agent for service of process, notice, or demand to be served on the corporation. According to Richter Industries, service on its registered agent was the only way to achieve personal jurisdiction over it. Richter Industries asserted in the circuit court that its registered agent was in Illinois. It submitted to the circuit court a paper filed in Illinois showing that its registered agent was in Illinois and that its officers and directors resided in Illinois or Florida.

¶ 30. This Illinois document does not appear to govern service on the corporation in Wisconsin. According to the records of the Wisconsin Department of Financial Services that this court obtained and exam-

ined,[27] Richter Industries obtained on March 2, 1993, a certificate of authority to transact business in Wisconsin, and the certificate was revoked by the department on November 3, 1994. Neither party presented this information to this court.

¶ 31. A foreign corporation that has no registered agent or whose certificate has been revoked may, under certain circumstances, be served by registered or certified mail addressed to the foreign corporation at its principal office as shown on the records of the Department of Financial Institutions under Wis. Stat. § 180.1510(4). According to the last records of the department, Richter Industries' principal office was in Illinois, while the last address for the registered agent was the Kenosha plant, the address at which Kenosha Hospital made personal service. Apparently, § 180.1510(4) was not satisfied; Kenosha Hospital did not serve Richter Industries at its principal office, which is located in Illinois.[28]

¶ 32. Wisconsin Stat. § 180.1531(4) and (5) also deal with service on foreign corporations whose certificate of authority has been revoked. These provisions were not cited to the court. The registered agent may be served but the cause of action must have arisen while the foreign corporation was authorized to transact business in Wisconsin. These provisions do not appear to assist Kenosha Hospital in arguing that it served Richter Industries properly. In the present case, the

---

[27] *See* Wis. Stat. § 990.01(2)(b) (judicial notice).

[28] Under Wis. Stat. § 180.1510(3), which applies to corporations formerly authorized to transact business in Wisconsin, the cause of action must have arisen while the corporation was authorized to transact business in the state for service to be made. Here the cause of action arose after Richter Industries' certification was revoked.

cause of action against Richter Industries arose long after its authority to transact business in the state terminated.

¶ 33. Service upon a foreign corporation may also be made in any other manner now or hereafter permitted by law.[29] Neither party argues that any statute, other than those mentioned above, governs the manner of service.

¶ 34. In contrast, Kenosha Hospital argues that § 801.14(2), not § 801.11(5), governs service of the notice of motion for judgment because the notice of motion is not like a summons but rather is a document in an already existing proceeding to which Richter Industries was a party. Section 801.14(2) provides, in relevant part, that service of a pleading, written motion, written notice, or demand upon a party shall be made by delivering a copy or by mailing a copy to the last-known address of the party. Delivering a copy means handing it to a party or leaving the copy at a party's office with a clerk or other person in charge thereof.[30]

---

[29] Wis. Stat. § 180.1510(5).

[30] Wisconsin Stat. § 801.14(2) provides:

Whenever under these statutes, service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy or by mailing it to the last-known address, or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this section means: handing it to the attorney or to the party; transmitting a copy of the paper by facsimile machine to his or her office; or leaving it at his or her office with a clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at

¶ 35. Kenosha Hospital asserts that its personal service of the notice of motion for judgment on a person in charge of Richter Industries' office at the address to which the original garnishment notice was mailed and for which receipt was acknowledged complied with Wis. Stat. § 801.14(2). We agree with Kenosha Hospital that service of the notice of motion complied with Wis. Stat. § 801.14(2).

¶ 36. The question that remains, however, is whether Wis. Stat. § 801.11(5), governing personal service of a summons, or § 801.14(2), governing service of pleadings and papers after commencement of action, applies to a Wis. Stat. § 812.41 motion for judgment against a garnishee for the amount of the debtor's debt.

¶ 37. The court of appeals concluded that service was proper because the earnings garnishment action had been commenced, that § 801.14(2) applies to service of papers in actions that have been commenced, and that personal service on a person who purported to be a "person in charge" satisfies the requirements of § 801.14(2).[31]

¶ 38. We agree with Richter Industries that Wis. Stat. § 801.11(5), governing personal service, is the appropriate statute to apply in this case, not

his or her dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing. Service by facsimile is complete upon transmission. The first sentence of this subsection shall not apply to service of a summons or of any process of court or of any paper to bring a party into contempt of court.

[31] The final sentence in § 801.14(1), governing service of papers in an action, provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in s. 801.11."

§ 801.14(2). We reason as follows: The judgment sought against Richter Industries, although arising out of an earnings garnishment proceeding that was properly commenced, is to some extent separate and distinct from the earnings garnishment action. The earnings garnishment action is designed to recover the debtor's earnings held by the garnishee. The legislature's goal in the earnings garnishment proceedings was to expedite the proceedings by providing a simplified and inexpensive means of serving a garnishee.[32] In contrast, the purpose of a motion for judgment against the garnishee for the entire debtor's debt is to recover a judgment against the garnishee for the garnishee's violating the garnishment statutes and failing to assist the creditor in procuring the debtor's earnings to satisfy the debtor's debt. Requiring personal service of the notice of motion for judgment does not contravene the legislative goal of a simplified, expeditious procedure for earnings garnishment. Because a garnishee becomes responsible for the full amount of the debtor's debt for failing to withhold the garnished funds without a legitimate excuse, it is important that heightened statutory protections be applied to give the garnishee full notice of the financial risk it is taking by failing to appear or respond to the notice of judgment.

---

[32] In adopting the new earnings garnishment procedure in 1993, the legislature attempted to simplify and hasten the earnings garnishment process. The number of garnishment proceedings initiated each year is voluminous for garnishees and the court system. In 1992, there were an estimated 84,600 garnishment actions filed in the circuit courts. Fiscal Estimate by Sheryl Gervasi, Director of State Courts Office (Aug. 16, 1993) (Drafting File Records, 1993 S.B. 336, on file at Legis. Reference Bureau, Madison, Wis.).

¶ 39. For these reasons, we conclude on reading Wis. Stat. §§ 812.35, 812.41, 812.31, 801.11(5), and 801.14(2) together that the notice of motion for judgment in an earnings garnishment procedure should have been served like a summons in the present case, as Richter Industries contends, rather than as a paper in a pending action as Kenosha Hospital contends.

¶ 40. As we explained previously, on the basis of the record before this court it does not appear, as best we can determine, that service of the notice of motion for judgment on a person in charge of one of Richter Industries' offices was sufficient service under § 801.11(5).

¶ 41. Richter Industries objects to the service of the notice of motion for judgment in this earnings garnishment case as having been made under the wrong statute. It does not argue that the failure of personal service of the notice of motion for judgment on it (which was commenced by certified mail service) or the failure to give it notice of the amount of the potential liability in the notice of motion for judgment offends due process, that is, that " 'traditional notions of fair play and substantial justice' " have been offended.[33] We therefore do not address any due process issues.

IV

¶ 42. The second issue presented is whether the circuit court erred in refusing to vacate the judgment against Richter Industries. The motion to vacate filed in the circuit court and Richter Industries' brief in this court do not refer to any rule or statute as authority for the motion to vacate. As best we can determine, Richter

---

[33] *Milliken v. Meyer,* 311 U.S. 457, 463 (1940).

Industries and the circuit court probably proceeded under Wis. Stat. § 806.07(1), which provides that a circuit court may relieve a party from a judgment upon such terms as are just. A circuit court exercises its discretion under § 806.07(1).

¶ 43. The circuit court declared that service was proper but did not state why. The parties in the circuit court and here did not carefully examine the various statutes involved and apply them to these facts. We have concluded that service of the notice of motion should have complied with Wis. Stat. § 801.11(5), and that according to this record, service did not comply with § 801.11(5). Thus the circuit court exercised its discretion upon an error of law and erroneously exercised its discretion in refusing to vacate the judgment.[34] We therefore remand the cause to the circuit court to consider again the motion to vacate the judgment.

¶ 44. Because the matter is returning to the circuit court, we consider the third issue raised by Richter Industries, namely whether a violation of the automatic bankruptcy stay occurred when Kenosha Hospital moved for judgment against Richter Industries. The parties spent most of their time in the circuit court and in this court debating this issue.

V

██

¶ 45. The third issue raised is whether Kenosha Hospital violated the automatic stay in bankruptcy provided by 11 U.S.C. § 362(a) when it moved the circuit

---

[34] *State v. Hutnik* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). *See also In re Settlement for Personal Injuries of Konicki* 186 Wis. 2d 140, 150, 519 N.W.2d 723 (Ct. App. 1994) ("[A] trial court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law.").

court for judgment against the garnishee, Richter Industries. Richter Industries argues that because the bankruptcy stay provisions were violated, the circuit court had no jurisdiction to enter a judgment against it. To decide this issue, we look to the text of 11 U.S.C. § 362(a) and the case law interpreting this provision.

¶ 46. The bankruptcy statute, 11 U.S.C. § 362(a),[35] provides that a bankruptcy petition operates as a stay of proceedings and enforcement actions

[35] 11 U.S.C. § 362(a) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate , of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

against a debtor or the property of the bankruptcy estate. The stay under this statute includes a stay of a garnishment proceeding against a debtor.[36] In this case, however, the garnishment proceedings against the debtor, Garcia, and his property are not at issue. Rather, Kenosha Hospital, the creditor, is pursuing an action against Richter Industries, the garnishee.

¶ 47. Accordingly, we must determine whether a creditor's pursuit of a judgment against a garnishee, seeking to hold the garnishee personally liable for all or part of the debtor's debt, indirectly violates the bankruptcy stay. In order to answer this question, we first consider the principal purposes of the bankruptcy law and then gauge the positions of the opposing parties in light of these purposes.

¶ 48. One of the underlying principal purposes of bankruptcy law is to discharge a debtor's debts and give the debtor a fresh start, free from the weight and pressure of pre-existing debt.[37] Another purpose of bankruptcy law is to promote the equal treatment of creditors of equal standing. The automatic stay provides creditors protection by preventing the creditors from engaging in a "disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings."[38]

---

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

[36] *See In re Mims,* 209 B.R. 746, 748 (Bankr. M.D. Fla. 1997).

[37] *Local Loan Co. v. Hunt,* 292 U.S. 234 (1934).

[38] *Mann v. Chase Manhattan Mortgage Corp.,* 316 F.3d 1, 3 (1st Cir. 2003) (citing *Soares v. Brockton Credit Union,* 107 F.3d 969, 975–76 (1st Cir. 1997)). *See also In re Smurzynski,* 72 B.R. 368, 371 (Bankr. N.D. Ill. 1987).

¶ 49. According to Richter Industries, if the default judgment obtained by Kenosha Hospital imposing personal liability on it is upheld, Garcia has not obtained complete relief and is not afforded a "fresh start." Richter Industries reasons as follows: Allowing a creditor to obtain a judgment against a garnishee-employer is merely a means of indirectly proceeding to collect, assess, and recover a claim against the debtor. Richter Industries argues that when the debt is clearly not that of the garnishee, but rather that of the debtor, the judgment will in effect be against the debtor and not the garnishee. Richter Industries further argues that judgments obtained against garnishee-employers may impair the employment relationship between debtors and their employers. The employment relationship is essentially a financial interest that is protected when a debtor files for bankruptcy. More specifically, Richter Industries argues that an employer who has suffered a judgment might be tempted to deduct the amount of the judgment from the debtor's wages to recoup its loss or to terminate the debtor's employment for the trouble and expense he has imposed on it.[39]

---

[39] Richter Industries also relies on *Chase Lumber & Fuel Co. v. Koch,* 197 B.R. 654 (Bankr. W.D. Wis. 1996). In *Chase Lumber,* the garnishee withheld wages of the debtor. The bankruptcy court concluded that postpetition retention of the garnished funds was a violation of the automatic bankruptcy stay.

The court of appeals distinguished *Chase Lumber* on the ground that in the present case none of Garcia's wages were withheld by Richter Industries. *Kenosha Hosp.,* 265 Wis. 2d 900, ¶¶ 17, 20. The court of appeals was incorrect. Some of Garcia's wages were garnished.

Even accepting Richter Industries' argument that the court of appeals erred on the facts and that *Chase Lumber* cannot be

¶ 50. In support of its position, Richter Industries cites *University of Alabama Hospitals v. Warren*, 7 B.R. 201 (Bankr. N.D. Ala. 1980).[40] In *Warren*, after a judgment was entered against a debtor for unpaid debts, writs of garnishment were served on the debtor's employer. The employer did not answer the writs, and a conditional judgment was initially entered against the employer-garnishee, followed by a final judgment. The debtor then filed for bankruptcy.

¶ 51. The *Warren* bankruptcy court expressed concern about the potential effect that the judgment against the garnishee-employer would have on the debtor's relationship with his employer. The *Warren* bankruptcy court viewed the debtor's right to earn a living as property that is protected from creditors affected by his bankruptcy.

¶ 52. The *Warren* bankruptcy court held that although the garnishee-employer was culpable for failing to answer the garnishment proceeding, it would not allow the judgment against the garnishee-employer to stand. The judgment, according to the bankruptcy court, would undermine the concept of a "fresh start,"

---

distinguished on the ground set forth by the court of appeals, we nevertheless conclude that *Chase Lumber* does not assist Richter Industries.

According to *Chase Lumber*, a debtor may claim that his wages that were wrongfully garnished are exempt, that the funds are the property of the estate, and that the automatic bankruptcy stay protected them. *Chase Lumber* is not applicable because Garcia is no longer a party to this action and has not claimed that his wages were wrongfully garnished.

[40] For additional cases taking a position similar to *Warren*, see, *e.g.*, *In re Feldman*, 303 B.R. 137 (Bankr. E.D. Mich. 2003); *O'Connor v. Methodist Hosp. of Jonesboro, Inc.*, 42 B.R. 390, 392 (Bankr. E.D. Ark. 1984).

could impair the relationship between the debtor-employee and the garnishee-employer, and would ultimately lead to punishing the debtor who is seeking a "fresh start," free from his pre-existing debts.[41]

¶ 53. In contrast, Kenosha Hospital argues that because the judgment against Richter Industries is based on Richter's failure to comply with the wage

---

[41] Richter Industries also relies on *O'Connor v. Methodist Hosp. of Jonesboro, Inc.,* 42 B.R. 390 (Bankr. E.D. Ark. 1984), in arguing that Kenosha Hospital's proceeding with the garnishment is clearly a willful and deliberate violation of an automatic stay.

The facts of *O'Connor* are substantially different from those in the present case. In *O'Connor,* the writ of garnishment against the wages of the debtor was filed seven days after the debtor filed for bankruptcy. After the filing of the stay and after receiving actual and official notice of the bankruptcy petition, the creditor proceeded with a default judgment against the garnishee.

In the case at bar, the notice of garnishment was filed well in advance of the debtor's bankruptcy filing and the oral entry of default judgment against the garnishee was made five days prior to the bankruptcy filing.

In *O'Connor,* the bankruptcy court concluded that "[i]t makes no difference whether the garnishment was filed prior or subsequent to the filing of the Chapter 13 petition. At whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the proceeding. *O'Connor,* 42 B.R. at 392, citing *In re Elder,* 12 B.R. 491 (Bankr. M.D. Ga. 1981).

In *O'Connor,* the creditor proceeded against the debtor and property of the estate. In contrast, Kenosha Hospital proceeded against Richter Industries, the garnishee, for Richter's own debt that it incurred by failing to comply with the garnishment statutes.

*O'Connor* was similarly distinguished by the bankruptcy court for the Northern District of Illinois in *In re Gray,* 97 B.R. 930, 937 (Bankr. N.D. Ill. 1989).

deduction statutes and does not involve the debtor or property of the estate, the bankruptcy petition and stay do not affect its judgment. Kenosha Hospital contends that a majority of courts that have considered the issue have held that a judgment obtained against a garnishee as a penalty for failing to comply with a pre-bankruptcy garnishment does not violate a bankruptcy stay because neither the debtor nor property of the estate is involved. Kenosha Hospital contends that only a minority of courts that have considered the issue take the position that Richter Industries urges, namely that a judgment against a garnishee as a penalty for failing to comply with a pre-bankruptcy garnishment is an indirect proceeding or act to collect, assess, and recover a claim against a debtor.

¶ 54. Kenosha Hospital relies on *Kanipe v. First Tennessee Bank,* 293 B.R. 750 (Bankr. E.D. Tenn. 2002), and other cases similar to *Kanipe,* as support for its position.[42] In *Kanipe,* before the debtor filed bank-

---

[42] *See, e.g., In re Sowers,* 164 B.R. 256, 259 (Bankr. E.D. Va. 1994) ("Attempting to collect money which was supposed to be garnished from an employee is not an action against the employee but is instead an action against the employer-garnishee."); *In re Waltjen,* 150 B.R. 419, 426 (Bankr. N.D. Ill. 1993) ("[A]n action against an employer for its failure to comply with the garnishment procedures will not be an action against the debtor or his the estate when the creditor is solely going after the assets of the non-debtor employer."); *In re Gray,* 97 B.R. at 935–37 (default judgment entered against employer who failed to respond to garnishment proceedings does not violate the bankruptcy automatic stay because neither the debtor nor property of the estate was involved; judgment against employer is a "new and independent cause of action, not an order to turn over assets of the judgment debtor."); *Bour v. Johnson,* 864 P.2d 380, 382 (Wash. 1993) ("[T]he automatic stay does not preclude enforcement of a default judgment against a

ruptcy, the creditor obtained a judgment and garnished the debtor's employer. The employer failed to answer the garnishment, and after the debtor was discharged from bankruptcy the creditor was granted a conditional judgment against the employer for the full amount of the debtor's debt to the creditor. The conditional judgment stated that it would become final if the employer failed to show good cause otherwise. The conditional judgment was not made final, and the debtor urged the bankruptcy court to order the creditor to cease prosecution of the conditional judgment.

¶ 55. The *Kanipe* bankruptcy court examined cases across the nation dealing with the issue of whether a judgment creditor's post-petition acts against a debtor's employer for failure to honor a pre-petition garnishment violated either an automatic stay or a discharge injunction. According to the *Kanipe* bank-

garnishee/employer because the judgment does not affect property of the debtor."); *Aluminum Co. of Am. v. Higgins,* 635 S.W. 2d 290, 298–99 (Ark. Ct. App. 1982) (garnishee's failure to file an answer produced its liability for funds originally owed by the debtor and judgment did not affect debtor because it was not directed against him or his estate); *Morris Plan Bank of Ga. v. Simmons,* 39 S.E.2d 166, 173–74 (Ga. 1946) (default judgment taken against garnishee for failing to answer garnishment did not offend bankruptcy stay because it was not an action against the debtor); *United Guar. Residential Ins. Co. v. Dimmick,* 916 P.2d 638, 640 (Colo. Ct. App. 1996) ("The release from dischargeable debts enjoins creditors from collecting discharged debts as personal liabilities of the debtor. It does not, however, prevent the judgment creditor from seeking to collect from the garnishee earnings of the debtor which the garnishee had a duty to withhold and pay to the judgment creditor.) (citations omitted).

*See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.").

ruptcy court, courts in various jurisdictions have divided on the issue, with the majority of courts concluding that no violation has occurred because the actions are against the employer solely based on its failure to comply with wage deduction statutes in the respective states and do not involve the debtor or property of the estate.

¶ 56. The *Kanipe* bankruptcy court concluded that the majority position is the correct one. It reasoned that the prosecution of the conditional judgment was against the employer, not the debtor; that neither the debtor nor property of the estate was implicated; and that the outcome did not directly or indirectly affect the debtor or the property of the estate.

¶ 57. The *Kanipe* bankruptcy court conceded that it, too, was concerned that its ruling could subject the debtor to retaliation from her employer, although no allegations of threats had been raised in those proceedings. The *Kanipe* court admonished employers that any employer that sustained corporate liability under the garnishment statutes "should tread lightly before seeking indemnification from the debtor as the employer itself could be in violation of the discharge injunction"[43] and in violation of consumer protection laws prohibiting the discharge of an employee because her earnings have been garnished.

¶ 58. We agree with Kenosha Hospital that the reasoning in *Kanipe* is sound. We therefore conclude that Kenosha Hospital did not violate the automatic stay provisions of 11 U.S.C. § 362(a) when it obtained a judgment against Richter Industries. Richter Industries does not claim that any earnings of Garcia protected by the bankruptcy stay are at stake here.

---

[43] *In re Kanipe,* 293 B.R. 750, 759 (Bankr. E.D. Tenn. 2002).

¶ 59. The judgment at issue in the present case is not against the debtor, Garcia, but against the garnishee, Richter Industries, for failing to comply with the garnishment statutes. The judgment taken by Kenosha Hospital against Richter Industries does not involve Garcia, the debtor, or property of the estate. Accordingly, the automatic stay does not prohibit Kenosha Hospital's actions.

¶ 60. Were we to hold otherwise, Wis. Stat. § 812.41 would have no teeth. We simply disagree with the view of the cases relied on by Richter Industries that a judgment against an employer-garnishee for failing to comply with the garnishment statutes will indirectly prevent a debtor from getting a "fresh start." We conclude, as did the *Kanipe* bankruptcy court, that if an employer held personally liable for failing to comply with the garnishment statutes attempted to collect from the debtor on that debt, or retaliate in some other way, it might be liable for violating a bankruptcy stay or discharge as well as the Consumer Credit Protection Act.

¶ 61. For the reasons set forth, we conclude that Kenosha Hospital did not violate the automatic stay provisions of 11 U.S.C. § 362(a) when it obtained a default judgment against Richter Industries.

¶ 62. For the reasons set forth, we reverse the decision of the court of appeals and answer the questions presented as follows:

(1) Wisconsin Stat. § 801.11(5) governs service of the notice of motion for judgment under § 812.41, and service in the present case did not on the record before us satisfy § 801.11(5).

(2) Because the circuit court did not apply the

369

proper law relating to service, it erred in refusing to vacate the judgment.

 (3) The automatic stay provisions of 11 U.S.C. § 362(a) did not bar a judgment against the garnishee Richter Industries for the amount of the debtor's debt.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

All work on this opinion was completed on or before June 30, 2004. Justice Diane S. Sykes resigned on July 4, 2004.

¶ 63. JON P. WILCOX, J. (*dissenting*). I dissent from Parts III and IV of the majority opinion, regarding whether service was proper and whether the circuit court erred in refusing to vacate the judgment against Richter Industries. I conclude that the applicable statute regarding service of a motion for judgment in a garnishment proceeding is Wis. Stat. § 801.14(2) (2001–02)[1] not Wis. Stat. § 801.11(5). As such, I would conclude that service was properly effectuated in this case and remand is unnecessary.

¶ 64. In this case, Kenosha Hospital attempted to serve Erik Richter of Richter Industries with a notice of motion and motion for judgment pursuant to Wis. Stat. § 812.41(1). Section 812.41(1) provides, in pertinent part:

If the garnishee fails to pay over funds to which the creditor is entitled under this subchapter within the time required under s. 812.39, *the creditor may, upon*

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

*notice to all of the parties, move the court for judgment against the garnishee* in the amount of the unsatisfied judgment plus interest and costs.

(Emphasis added.) The parties do not contest the merits of Kenosha Hospital's § 812.41(1) motion; rather, they contest whether Kenosha Hospital properly served its motion for judgment on Richter Industries.

¶ 65. Section 812.41(1) simply provides that notice to all parties is required when serving a motion for judgment against a garnishee. The statute does not specify what type of notice is appropriate, nor does it specify with which statute notice must comply. Thus, I turn to Wis. Stat. § 812.31(1), which provides: "The procedures in this subchapter govern the garnishment of earnings, regardless of the amount of the judgment debt. Except as otherwise provided in this subchapter, the general rules of practice and procedure in chs. 750 to 758 and 801 to 847 shall apply to actions under this subchapter."

¶ 66. As there is no dispute that the earnings garnishment action was properly commenced, majority op., ¶¶ 21, 38, I turn to § 801.14(2), which governs the filing of pleadings and other papers in civil actions. This section provides, in pertinent part:

> Service upon the attorney or upon a party shall be made by delivering a copy or by mailing it to the last-known address, or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this section means: handing it to the attorney or to the party; transmitting a copy of the paper by facsimile machine to his or her office; or *leaving it at his or her office with a clerk or other person in charge thereof;* or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his or

her dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

Wis. Stat. § 801.14(2) (emphasis added). The majority agrees that Kenosha Hospital properly effectuated service under § 801.14(2). Majority op., ¶ 35.[2]

¶ 67. However, after conceding that the garnishment action was properly commenced and Kenosha Hospital's motion for judgment complied with § 801.14(2), the majority nevertheless holds that Kenosha Hospital's motion for judgment was improperly served. The majority holds that Kenosha Hospital's motion for judgment was improperly served because the majority concludes that § 801.11(5) (governing the service of a summons on a domestic or foreign corporation) rather than § 801.14(2) (governing the service and filing of pleadings and other papers) is the applicable statute for purposes of serving a motion for judgment against a garnishee in a garnishment action. Majority op., ¶ 39. The majority makes this holding despite the fact that Kenosha Hospital's civil garnishment action was properly commenced, and despite the fact that Kenosha Hospital served a *motion* for judgment and not a *summons* on Richter Industries.

¶ 68. As I discussed above, because Kenosha Hospital properly commenced the garnishment action in this case and served Richter Industries with a motion for judgment, § 801.14(2) is the appropriate statute governing service of a motion for judgment in a garnishment action. As will be demonstrated below, there

---

[2] Service upon an attorney would not have been necessary in this case as Richter Industries did not obtain counsel until after the circuit court entered the default judgment against it. *See* Pet'r Br. at 3.

is simply no legal authority supporting the majority's conclusion that "the notice of motion for judgment in an earnings garnishment procedure [should be] served like a summons . . . rather than as a paper in a pending action . . . ." Majority op., ¶ 39.

¶ 69. Because the majority concludes that § 801.11(5) is the proper statute governing service of a motion for judgment in a garnishment action, I begin by examining the text of Wis. Stat. § 801.11 to determine the scope of this statute. The explicit language of § 801.11 provides that its provisions govern when a court in this state may exercise "personal jurisdiction over a defendant by service of a summons . . . ." Wis. Stat. § 801.11. Here, Kenosha Hospital did not seek to serve a summons upon Richter Industries in order to obtain personal jurisdiction over Richter Industries; rather, it served a motion for judgment against Richter Industries pursuant to Wis. Stat. § 812.41 because Richter Industries allegedly failed to turn over the appropriate amount of Jesus Garcia's wages. Section § 801.11(5) simply does not apply to this case because § 801.11 governs when a *summons* has been properly served and Kenosha Hospital did not attempt to serve a summons on Richter Industries.

¶ 70. The majority provides no legal authority for the proposition that a *motion* for judgment against a garnishee in a properly commenced, pending garnishment proceeding must be served as if it were a *summons* in a completely new action. Under Wis. Stat. § 801.14(1), the only time a paper need be filed in a proceeding that has been properly commenced as if it were a summons is when a party files a "pleading[] asserting new or additional claims for relief" against a defendant who is in default for failure to appear. However, at the time Kenosha Hospital served its

373

motion for judgment on Richter Industries, Richter Industries was not in default for failure to appear. Rather, Kenosha Hospital filed its motion for judgment because Richter Industries allegedly failed to pay the required sums to Kenosha Hospital in the garnishment proceeding.

¶ 71. What troubles me about the majority opinion is that in addition to simply ignoring the explicit language of the relevant statutes in this case, the majority provides little reasoning and no authority to support its conclusion that § 801.11(5) is the applicable statute in this case. After devoting a lengthy 21 paragraphs to a discussion of various statutes governing service that may or may not apply in this case and unnecessarily opining as to whether service in the present case satisfied one or more of those statutes, the majority allocates a mere one paragraph of discussion regarding *which statute actually applies* in this case. *Compare* majority op., ¶¶ 16–37 *with* majority op., ¶ 38.

¶ 72. The majority summarily concludes that § 801.11(5) rather than § 801.14(2) is the applicable statute for purposes of serving a motion for judgment against a garnishee in a garnishment action. The majority explains, without citing to a single source of legal authority, that "[t]he judgment sought against Richter Industries, although arising out of an earnings garnishment proceedings that was properly commenced, is to some extent separate and distinct from the earnings garnishment action." Majority op., ¶ 38. Again, without citing to any authority, and without explaining why, the majority states that it is important that the "heightened statutory protections" of § 801.11(5) apply in this case. *Id.*

¶ 73. Even if I were to agree with the majority's unfounded assertion that § 801.11(5) is applicable, despite the fact that § 801.11(5) governs the service of a *summons,* I would nonetheless conclude that service under § 801.11(5) was proper. Section 801.11(5) provides that service may be effectuated upon a foreign corporation:

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, *the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.*

Wis. Stat. § 801.11(5)(a) (emphasis added). The majority concludes that Kenosha Hospital's service did not comply with this statute because the Kenosha plant where the motion was served was not the office of Erik Richter. Majority op., ¶¶ 28, 40. Instead, according to the majority, Kenosha Hospital should have served its motion at Richter Industries' principal office located in Illinois. Majority op., ¶¶ 29–31.

¶ 74. Case law establishes that when evaluating whether service properly complied with § 801.11(5)(a), courts must ask two questions:

> (1) Objectively, was the location where the summons and complaint were presented "the office of such officer, director or managing agent"? (2) Subjectively, was it reasonable for the process server to conclude that the person presented with the summons and complaint was "the person who is apparently in charge of the office"?

*Bar Code Res. v. Ameritech Info. Sys., Inc.,* 229 Wis. 2d 287, 292, 599 N.W.2d 872 (Ct. App. 1999). Addressing the first factor, Kenosha Hospital attempted to serve

Erik Richter of Richter Industries by personally serving a copy of its motion for judgment at Richter Industries' plant in Kenosha with a secretary who stated she was in charge of the office. This is the same location to which Kenosha Hospital mailed the garnishment notice to commence the underlying garnishment action pursuant to Wis. Stat. § 812.35(3). This is also the same location at which Erik Richter personally signed the return receipt on the original garnishment notice. Also, a record from the Department of Financial Institutions, while indicating that Richter Industries' certificate of authority to transact business in Wisconsin was revoked as of November 3, 1994, nevertheless indicates that Richter's "Registered Agent Office" is located at 4910 70th Ave., Kenosha Wisconsin—the location at which Kenosha Hospital served the original notice of garnishment and attempted to serve its motion for judgment.[3] This address is listed separately from Richter Industries' "Principle Office address," which is located in Illinois. Under these facts, I conclude that objectively, Richter Industries' plant in Kenosha was "the office" of Erik Richter for purposes of § 801.11(5)(a).

¶ 75. The majority's contrary conclusion is interesting in light of the fact it also concludes that service would have been proper under § 801.14(2), were that statute applicable. As noted above, § 801.14(2) allows for service of papers in a civil action by "leaving it at [the party's] office with a clerk or other person in charge thereof[.]" Wis. Stat. § 801.14(2). The majority fails to explain why service would have satisfied

---

[3] *See* http://www.wdfi.org/corporations/crispix/details.asp?ID=R028857 (last visited June 25, 2004).

§ 801.14(2) but does not satisfy § 801.11(5)(a), which allows for service by delivering a copy of a summons "in the office of [an] officer, director or managing agent with the person who is apparently in charge of the office." Wis. Stat. § 801.11(5)(a). Neither statute specifies that the "office" of an officer, director or managing agent of a foreign corporation for purposes of service is necessarily located at the principal corporate office in the business's state of incorporation. In short, the majority provides no authority for its conclusion that Kenosha Hospital was required to serve Erik Richter at Richter Industries' principal office in its state of incorporation.

¶ 76. As to the second factor, the majority concludes that service was proper under § 801.14(2), which requires service to be made by "leaving [the relevant document] at [the party's] office with a clerk or other person *in charge* thereof." Wis. Stat. § 801.14(2) (emphasis added). In contrast, section 801.11(5)(a) requires service to be made upon "the person who is *apparently* in charge of" the party's office. Wis. Stat. § 801.11(5)(a) (emphasis added). Thus, if the person accepting service would qualify as the person "in charge" of the party's office for purposes of § 801.14(2), then that person would certainly qualify as the person "apparently in charge of" the party's office for purposes of § 801.11(5)(a). In any event, "[w]hen a person appears in response to a request for someone who may be served with legal process, it will normally be reasonable for the process server to serve that person." *Horrigan v. State Farm Ins. Co.*, 106 Wis. 2d 675, 684, 317 N.W.2d 474 (1982).

¶ 77. Finally, I cannot understand Part IV of the majority opinion. After determining that service on Richter Industries was improper under § 801.11(5),

majority op., ¶ 40, the majority nonetheless orders a remand to the circuit court to reconsider Richter Industries' motion to vacate the default judgment. Majority op., ¶ 43. However, by concluding that service did not comply with § 801.11(5), the majority has in fact determined what the circuit court must do on remand, namely, vacate the order for default judgment against Richter Industries.

¶ 78. The majority's only rationale for concluding that service of a motion for judgment in a garnishment action must be served as a summons is that a motion for judgment is somehow a separate proceeding from the original garnishment action such that the "heightened statutory protections" of § 801.11(5) apply. Majority op., ¶ 38. As noted *supra,* § 801.11 governs under what circumstances a court may "*exercise personal jurisdiction* over a defendant by service of a summons . . . ." Wis. Stat. § 801.11 (emphasis added). By concluding that a motion for judgment in a garnishment proceeding must be served in accordance with § 801.11(5) and that service here did not comply with that section, the majority has essentially concluded that the circuit court failed to obtain personal jurisdiction over Richter Industries. If the circuit court failed to obtain personal jurisdiction over Richter Industries, then there is nothing left to consider on remand.

¶ 79. Because the applicable statute regarding service of a motion for judgment in a garnishment proceeding is § 801.14(2) not § 801.11(5), and in any event, service was properly effectuated under § 801.11(5)(a), I dissent.